No. 13,851.

COMMERCIAL STANDARD INSURANCE COMPANY *v.* RINN ET AL.
(65 P. [2d] 705)

Decided February 15, 1937.

Mr. W. A. ALEXANDER, Mr. CECIL M. DRAPER, for plaintiff in error.

Messrs. RINN & CONNELL, for defendants in error.

*In Department.*

MR. CHIEF JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court and will hereinafter be referred to as there, or plaintiffs by name and defendant as the company. The latter was a nonresident corporation whose general agent in this state was the E. W. Shaw Company, or E. W. Shaw, which is here immaterial. This general agent we hereinafter refer to as Shaw.

Plaintiffs, a law firm, sued in the county court for $500 as a reasonable attorney's fee for successfully resisting an extradition, and had judgment therefor. On appeal and trial de novo a verdict for the same amount was returned and to review the judgment thereupon entered the company prosecutes this writ. Thirty-six errors are assigned, going to the admission of, and refusal to strike, certain testimony; the refusal of four instructions; the giving of seven; the sufficiency of the evidence; and the amount of the verdict. Such are our conclusions that specific comment as to many of these is obviated. The vital questions are the employment of plaintiffs and the authority of those who employed them.

One Burke, operator of a taxicab, was insured in the company. January 30, 1934, he conveyed passengers into Wyoming. On his return trip with them, still in that state, he had a collision. One of his passengers was killed and several others injured. Of the occupants of the other car, residents of Wyoming, one was killed and several others injured. Criminal proceedings were instituted against Burke in Wyoming and the attempted extradition followed. Payment for personal injuries was limited by the policy to $5,000 for one person and $10,000 for one accident. Hence, should Burke be extradited to Wyoming and served there, there appeared a probable burden on the company of defending suits in that state, a presumable defect in available remuneration, and a possible prorating. Moreover, if judgments were first procured in Wyoming, Colorado claimants might get nothing. The policy did not cover attorney's fees in criminal actions.

One Franklin was interested in Colorado claimants. Alexander, a Denver attorney, represented the company in matters concerning its civil liability and prospective civil suits. Leier, the company's local agent at Boulder, had written the policy. Fisher was an investigator, and one Connors an "investigator, adjuster and field man," for Shaw. The Denver office of Shaw was the office of

the company and the stationery used in correspondence carried the names of both.

■ At almost every crucial point the evidence was conflicting. It appears Alexander offered to pay Franklin $50; that Franklin could not act but called in plaintiffs and advised Alexander; that the latter phoned plaintiffs who reported that Burke, with whom they had conferred, was unable to pay; that plaintiffs wrote Connors to come to Boulder for consultation and bring the company's files, referring to "your company"; that Connors answered assuring them of the cooperation of himself, Alexander and Fisher; that plaintiffs wrote Shaw, as agent of the company, stating "We are representing you and Burke"; that while this letter is not a model of diplomacy or courtesy, it lacked nothing in lucidity and produced a conference between plaintiffs, Connors, and Alexander, and a phone conversation between Connors and Rinn; that Alexander and Connors went to Boulder with the company's files and conferred with plaintiffs; that the extradition hearing was held the next day with Connors present with the files; and that plaintiffs thereafter, having received no further payments, wrote the company reviewing briefly the history of the matter, asking the payment of $50 which they claimed had been promised, and "whatever additional sum you may care to pay." Apparently the company did not "care to pay" and this litigation followed. In addition to the foregoing there is evidence that plaintiffs gave $500 as their contemplated fee, or retainer, and that Alexander told them to continue their work and a reasonable fee would be paid. This is disputed, as is other evidence supporting employment. With such conflicts we are not concerned. That there is ample evidence to support the conclusion that Alexander and Connors, for the company, employed plaintiffs and agreed to pay them, we think clear. Of the fact the jury was the sole judge.

■■ The next question, and the seriously disputed one, is the authority of these agents to bind the company.

Of course no assumption and no declaration of alleged agents, standing alone, can bind the principal. *Lester v. Snyder*, 12 Colo. App. 351, 356, 55 Pac. 613. Franklin says Connors represented the company. Rinn says Connors was its "agent" and "general agent" and that Alexander was its "general attorney." These statement are mere conclusions. *Stuart & Co. v. Asher*, 15 Colo. App. 403, 406, 62 Pac. 1051; 90 A. L. R. 756. But Shaw was general agent for the company and his employees, so acting, had such authority as he had. For their errors, if any, the company must look to him. Had he taken personal charge, employed counsel and agreed to pay, there would be no question. What he did by his office force he did by himself.

Alexander's status as a general attorney for the company is asserted and denied. In the broad acceptance of the term it is doubtless not established. But his was admittedly much more than an isolated employment. He represented the company in all suits, etc., growing out of the collision in question. These might be numerous and were reasonably certain to involve work elsewhere than in Denver, probably in different suits and in different states. He must consider these things as a whole. They involved much beside the trial of cases. The extradition, though primarily related to a criminal proceeding, might have had a vital bearing on the civil suits. If he so believed it was unquestionably within the scope of his duties. As relating to all these his employment was general. A general attorney may employ local counsel in local matters. *Northern Pac. Ry. Co. v. Clarke*, 106 Fed. 794. Numerous authorities are cited holding that counsel employed in a particular case can neither delegate his authority nor employ others at the client's expense. 6 C. J., p. 668, §181; *Lathrop v. Hallett*, 20 Colo. App. 207, 77 Pac. 1095. We do not doubt the rule but it applies neither to Connors nor Alexander under the facts here admitted.

■ As to the authority of a general agent, such as Shaw, and the law that the principal is bound by acts within its apparent scope, see *Independence Ind. Co. v. International Trust Co.,* 96 Colo. 92, 101, 39 P. (2d) 780; *Silver Mt. M. Co. v. Anderson,* 51 Colo. 298, 305, 117 Pac. 173.

■ It is worthy of comment that Connors was not produced as a witness and the excuse given for his absence was trivial, and that Shaw, the general agent of the company, and whose employees, acting in his name and presumably within the scope of his agency and their duties, did not testify, and no excuse was given for his absence. The company cannot escape the damaging presumptions deducible therefrom. *Conner v. Sullivan,* 84 Colo. 572, 574, 272 Pac. 623; *Dresser v. Mullin Co.,* 93 Colo. 271, 25 P. (2d) 936.

■ The assigned errors on admission of evidence go generally to conversations between Franklin and Alexander, Franklin and Connors, Connell and Alexander, Rinn and Connors, and Rinn and Alexander. Their basis is want of proof of the agency of Alexander and Connors and the rule that such agency cannot be established by statements of the alleged agent. The answer to all these is that such evidence is proper when prima facie proof of agency has been made, and that in so far as it was here wanting at the time this testimony was admitted it was later forthcoming and the error, if any, was thus cured.

■ Assignments on refused instructions are covered by what we have heretofore said, and by instructions given. We have carefully examined those based upon instructions given and find them without merit. So far as they deserve notice they rest on the assumption that the suit was one for a specific fee, definitely contracted for, and that the verdict is in excess therof. But the suit was for a reasonable fee, and while it appeared that plaintiffs had been paid $100 by Burke, still there was evidence which would have justified a much higher sum, had the complaint supported it.

82

Finding no reversible error in the record the judgment is affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE BAKKE concur.