No. 14,507.

GORDON, doing business as GORDON CONSTRUCTION
COMPANY *v*. PETTINGILL ET AL.
(96 P. [2d] 416)

Decided October 30, 1939.   Rehearing denied November 27, 1939.

Messrs. VAN CISE, ROBINSON & CHARLTON, Mr. ROBERT
A. THEOBALD, for plaintiff in error.

Mr. J. F. SCHNEIDER, Mr. HORACE N. HAWKINS, SR., Mr.
CHARLES H. HAINES, Mr. LUCIAN M. LONG, for defend-
ants in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court. They are hereinafter referred to as Gordon and Pettingill respectively. For convenience we elect to treat defendants in error as a single person. This in no way affects our opinion and the record discloses that it can confuse neither the parties nor the trial court. One H. E. Baumgarten is hereinafter referred to as Baumgarten.

Gordon sued Pettingill in justice court to recover $180 and had judgment. On appeal to the county court a jury was waived, the cause was tried on an agreed statement of facts and Pettingill had judgment against Gordon for costs. To review that judgment the latter brings error. Since the facts are not in dispute the sole contention, under the six assignments, is that the court put the wrong construction on the facts and was in error as to the law applicable.

Gordon was in the highway construction business. Baumgarten was his bookkeeper with authority to sign checks for payrolls (including $40 per week to himself), machinery and office supplies only. The printed form of those checks bore Gordon's business title and address, and printed signature, with a blank for the name of the person actually signing, thus: The Gordon Construction Co., By----------------------------------.

Baumgarten was a tenant of Pettingill and paid the latter $180 rent by three such checks, for $60 each, dated August 3, 1935, January 16, 1936, and October 3, 1936, respectively, each bearing the signature "The Gordon Construction Co., By H. E. Baumgarten." Gordon was out of the state "the greater portion of 1935 and 1936." Baumgarten was his only office employee, so, without the actual knowledge of either of these parties Baumgarten embezzled Gordon's money and used it to pay his own house rent. In July, 1937, Baumgarten quit his

employment, his books and bank statements were examined, and so Gordon first learned of the embezzlement, whereupon he made demand and brought suit.

■ Gordon says Pettingill was put upon notice that Baumgarten was paying his personal rent with his employer's money and bound to inquire into his authority to do so, and that having failed in that duty he must repay, citing, inter alia, 2 Am. Jur., p. 306, §390; Restatement, Law of Agency, p. 699, §314; *DeBaca v. Higgins*, 58 Colo. 75, 143 Pac. 832; *Gerard v. McCormick*, 130 N. Y. 261, 29 N. E. 115. There is no question as to the general rule and under it Pettingill would lose because the form of the check and its signature gave him the notice alleged. The only question is, Was Pettingill within any well recognized exception? Answering this we note first these peculiar facts: The bank, apparently, had no special knowledge. It cashed all Gordon's checks so signed. Their face did not disclose their purpose. Baumgarten had authority to pay his own salary with such checks. The three in question were spread over a period of 14 months during which his salary was $2,240. If that account was duly charged with these rent payments only a slight irregularity, at most, occurred, and Gordon lost nothing. Assuming Baumgarten's integrity this would be the natural conclusion of one dealing with him, knowing his authority to so pay his salary, and taking such checks for his personal debts. Each check was but for one and one-half weeks salary. Five months elapsed between the first and second, and eight months between the second and third, or over a year between the first and the last. Another eight months elapsed before the matter was brought to the attention of Pettingill, and for that length of time Baumgarten had been elsewhere. In other words after Pettingill took the first of these checks eighteen months elapsed before its validity was questioned; meanwhile he had taken the other two. Reason therefore instantly suggests two exceptions to the general rule which the

law recognizes; first, ratification, second estoppel. Because if Pettingill was misled to his injury by the action or absence of action, by Gordon, or if, by such action or absence of action, Gordon apparently put the stamp of his approval on the conduct of Baumgarten he could not thereafter "in equity and good conscience" be permitted to recover of Pettingill, however unauthorized the issuance of the checks.

■ When one of two innocent parties must suffer for the fraud of a third, he who placed the wrongdoer in a position to perpetrate it is chargeable. By that rule Gordon pays. He put Baumgarten in charge of his business; he authorized his bank to pay such checks; his limitation on that authority was known only to himself and his agent. It is no fault of Pettingill's that Baumgarten was Gordon's only office employee, nor is he to be held because for two years Gordon did not know that his own bookkeeper was robbing him. Liability attaches to such negligence and estoppel follows. *Bank v. Richmond Elec. Co.,* 106 Va. 347, 56 S. E. 152, 7 L. R. A. (N. S.) 571; *Dana v. National Bank,* 132 Mass. 156; *Brown v. People's Nat. Bank,* 170 Mich. 416, 136 N. W. 506, 40 L. R. A. (N. S.) 657. Furthermore, we think that in the light of the foregoing, Pettingill was entitled to believe, when the second check was presented, that Gordon's long silence was explained by his ratification of Baumgarten's action. This reasoning is especially applicable to the second and third checks, and we see no escape from the conclusion that Gordon must be held under the doctrine of ratification.

■ It is said that here there can be no equitable estoppel because Pettingill, when he received the checks, had knowledge of the fraudulent use of Gordon's money. The statement is too strong. "Fraudulent" must be omitted. Unquestionably he had notice to put him on inquiry, failing which, and assuming Gordon's reasonable diligence in his own interest, Pettingill would lose. But it is absence of that diligence which creates the estoppel.

Counsel say a principal can be held to ratify only where full knowledge is shown. That is also too strong. In all similar cases the law presumes whatever reasonable diligence would disclose. A litigant will not be heard to say he was ignorant of facts which it was to his interest to know, and which, if awake, he would have known.

Here Pettingill may rely upon Baumgarten's authority to pay himself as though he knew of it when he took the check. He may rely upon apparent authority and support this under the doctrine of estoppel. *Sigel-Campion Co. v. Ardohain,* 71 Colo. 410, 207 Pac. 82. When Baumgarten wrote this first check to Pettingill he had full authority to write it to himself for salary. Having done so he could indorse it to Pettingill to pay his rent. If so he could write it to Pettingill in the first instance. In either case he was within his authority if he made the proper charge. In either case the face of the check would have shown the use of Gordon's money to pay Baumgarten's debt, but, presuming Baumgarten's good faith, as Pettingill was entitled to do, such use of the check would have been within Baumgarten's authority.

We conclude therefore that on the ground of ratification, as well as on the ground of estoppel, the trial court was right.

The judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE BAKKE concur.