No. 21629.

BEMEL ASSOCIATES, INC., DONALD BEMEL, MILTON BEMEL AND EUGENE BEMEL *v.* ROBERT C. BROWN, FRED CHAMPLAIN, MORTGAGE CORPORATION OF AMERICA AND INGLIS MORTGAGE COMPANY.
(435 P.2d 407)

Decided December 26, 1967.     Rehearing denied January 15, 1968.

James B. Radetsky, Jules Ornstein, for plaintiffs in error.

Dawson, Nagel, Sherman & Howard, Michael A. Williams, for defendant in error Inglis Mortgage Company.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

A RATHER full recitation of the pertinent undisputed

facts is necessary for an understanding of this writ of error.

The record discloses that Bemel Associates, Inc., of Rochester, Minnesota, through its agent Donald Bemel, a Denver resident, contacted Fred Champlain in Denver, Colorado, in February 1961 seeking a $700,000 loan to finance a proposed motel and filling station development in Rochester. Champlain recommended defendant in error, Robert C. Brown, as a mortgage broker who could handle the transaction. At the time Brown was operating out of the Inglis Mortgage Company suite in Denver having moved at least part of his furniture to that location. Inglis, a reputable lending agency, is also a defendant in error. Brown and Champlain at the time were operating under the name of Mortgage Corporation of America and *claimed* to have placed several prior mortgages through Inglis.

It is further disclosed that Brown represented to Donald Bemel he could secure the loan through Inglis. Brown thereafter, in connection with the transaction, wrote to Bemel Associates on April 17, 1961, on Inglis' stationery stating that the Mortgage Corporation of America had become a subsidiary of Inglis. This particular letterhead bore both Inglis' printed address and phone number as well as Brown's Lakewood address and telephone number. Brown's testimony was that an Inglis secretary had given him the stationery he used. He later stated it was Inglis' office manager who gave him the stationery plus F.H.A., V.A. and other forms. However, the manager testified he did not know how Brown obtained the stationery. Brown also testified that he had used Inglis' secretaries to do some of his typing and that he had given Donald Bemel Inglis' telephone number as one of the offices where he could be reached. It was admitted by all parties that Brown received phone calls at Inglis' office. Brown also testified that H. Sanford Weaver, then President of Inglis, had asked him to move to Inglis' office with the end

view of becoming its Denver manager and to seek mortgage prospects. A month or so after Brown moved, and when the Bemels' loan negotiations were in progress, Inglis, Brown and Champlain entered into a written mortgage brokerage agreement that in essence, as pertinent here, provided that each party was to be an independent contractor.

Later Brown and Donald Bemel made a trip to Rochester as a result of which Bemel Associates submitted a formal loan application to Brown on an Inglis form prepared by Brown. Bemel Associates was instructed by letter over Brown's signature to pay Inglis a standby fee of $7000 to be refunded if the loan was not obtained. That fee, however, was paid to Mortgage Corporation of America when Brown telephoned Bemel Associates in Rochester and requested that the check be made payable to Mortgage Corporation of America in Denver. Bemel did not question the change in the recipient of the fee because of a letter from Brown which represented, in part, as follows:

"With reference to the above captioned loan, this is to inform you that the Mortgage Corporation of America, now a subsidiary of the Inglis Mortgage Company are willing to place the above captioned loan through are [our] investors * * *."

When the $7000 check arrived in Denver, Brown and Champlain endorsed it for deposit to their own company's account and subsequently drew out the proceeds.

Though Brown at times, assisted by the President of Inglis, diligently attempted to procure the desired financing, he was unsuccessful. Thereafter, Bemel Associates demanded a refund of its standby fee which could not be produced by Brown, Champlain and the Mortgage Corporation of America. Thereafter Brown and Champlain agreed to and did, at the sole request of Donald Bemel, execute a $7000 promissory note to Bemel Associates as evidence of the indebtedness. On default of that note Bemel made a demand on Inglis

for payment of the $7000 which demand was refused. This action has resulted from that refusal.

At the close of the trial Brown admitted liability on the $7000 note and moved that judgment be entered on the note, but that the fraud action be dismissed. Inglis moved for a dismissal in its favor. The court entered judgments *on the note* against Brown and also entered default judgment against Champlain and Mortgage Corporation of America who did not appear and who are not parties to this writ of error. The claim of fraud against Brown and Inglis was dismissed. Inglis then withdrew its cross-claim against Brown and Champlain.

Bemel asserts several grounds of error, but we consider only whether the court erred in dismissing the fraud action against Brown and Inglis.

■ In *Morrison v. Goodspeed,* 100 Colo. 470, 477-78, 68 P.2d 458, 462 (1937), this court set out the criteria for actionable fraud as follows:

"* * * (1) A false representation of a material existing fact, or a representation as to a material existing fact made with a reckless disregard of its truth or falsity; or a concealment of a material existing fact, that in equity and good conscience should be disclosed. (2) Knowledge on the part of the one making the representation that it is false; or utter indifference to its truth or falsity; or knowledge that he is concealing a material fact that in equity and good conscience he should disclose. (3) Ignorance on the part of the one to whom representations are made or from whom such fact is concealed, or the falsity of the representation or of the existence of the fact concealed. (4) The representation or concealment made or practiced with the intention that it shall be acted upon. (5) Action on the representation or concealment resulting in damage. * * *."

■ The representations by Brown, in connection with his negotiations with Donald Bemel as well as with Bemel Associates in Rochester, have all of the

elements to charge him with fraud. The trial court, however, held that the execution of the note resulted in a waiver which relieved Brown of any prior conduct. We do not agree with that conclusion for the only pertinent evidence in this regard is that the note was given to Donald Bemel for his company merely as evidence of the sum due. The actions of Brown were not negated by this acknowledgment that he owed the money obtained solely on reliance on his fraudulent conduct. It follows that the trial court erred when it dismissed the fraud claim against Brown.

■ Turning next to the question of the dismissal of Inglis, we conclude that the trial court did not err.

There was no evidence that Brown was ever the actual agent of Inglis. There is no testimony by the Bemels or Brown that there was any direct contact on the loan by Bemel Associates with Inglis. There were no representations made by Inglis at any time. Nevertheless, plaintiffs in error attempt to invoke the doctrine of estoppel in urging that the court erred in decreeing Inglis free from liability. It is contended that the doctrine contained in *Chamberlain v. Poe,* 127 Colo. 215, 256 P.2d 229, should be applied. In that case we stated:

"* * * when one by his conduct, actions or express words leads another to believe in the existence of a certain condition of things of more or less advantage to the one so believing, which results in the believer's action and reliance thereon so as to change his existing position, the one whose acts, conduct or words caused the belief and reliance is forever precluded from asserting against such believer a different state or condition of things as existing at the same identical time. * * *."

■■ However, the facts in the case at bar do not bring it within the rule stated. The trial court found there was no conduct, action or express word by Inglis leading any one to believe that Brown was acting for

it. The occupying of adjoining space to the Inglis office and the opportunity afforded Brown to use its employees to receive telephone messages does not create an agency and cannot form the basis of charging Inglis with conduct upon which Bemel Associates relied to its damage. The sharing of office space, stenographers and telephone is a common business practice and imposes no liability on each of the parties in such pooling arrangements. As for the use of the Inglis stationery and forms by Brown, there was no evidence that Inglis' officials had any knowledge that Brown was using these items. At most the evidence was in conflict as to how Brown obtained them, and the court on this one bit of evidence resolved the matter in favor of Inglis. We are bound by the court's resolution of that conflict. For the doctrine of estoppel to be applied, there must first of all be evidence that Brown was ostensibly an agent of Inglis with apparent authority and that the alleged principal had knowledge of or demonstrated a reckless indifference as to the conduct of the so-called agent. In this case the only representation concerning Brown's agency was by Brown himself. It is axiomatic that one cannot rely on the representation of the agent himself alone to charge a so-called principal with the acts of the alleged agent. *Commercial Ins. Co. v. Rinn.* 100 Colo. 76, 65 P.2d 705.

The judgment dismissing the action against Inglis is affirmed. The judgment in favor of Brown on the action on fraud is reversed with directions to enter judgment in favor of the plaintiffs in error and that the court in entering such judgment against Brown accompany the judgment with the findings that the damages sustained by plaintiffs were incurred as a result of the fraudulent misrepresentation by the defendant Brown.

MR. JUSTICE SUTTON concurs in part and dissents in part.

MR. JUSTICE PRINGLE not participating.

Mr. Justice Sutton concurs in part and dissents in part:

I concur as to the majority holding that Robert C. Brown was guilty of fraud and that as to him the trial court's judgment should be reversed. I would not, however, affirm the dismissal of Inglis Mortgage Company for reasons which hereinafter appear.

My reading of the entire record and examination of the exhibits fails to disclose that Brown at any time rented the adjoining space from Inglis. The undisputed evidence is that he was put in Inglis's office by its then President, as Brown testified, with the idea of Brown becoming Inglis's Denver manager and to seek mortgage loan prospects. There is no dispute that he officed in a suite formerly used by Inglis's personnel who had recently moved to an adjoining suite, *and that,* Inglis still had some of its furniture in the rooms occupied by Brown. Brown obviously had a free run of Inglis's entire premises, even using its phones and secretaries. Thus Inglis made it possible for him to perpetrate the fraud on Bemel.

I also do not agree, as stated by the majority, that "There is no testimony by the Bemels or Brown that there was any direct contact on the loan by Bemel Associates with Inglis." The fact is, and the record so discloses, that both Brown and Donald Bemel testified that when they flew to Minnesota, by happenstance they met Mr. H. Sanford Weaver, Inglis's President, at the Denver airport. Further, that Brown introduced Bemel to Weaver. Part of Brown's testimony in this regard was:

"Q I assume you left from Stapleton Airport in Denver?

"A Yes.

"Q Upon your arrival at Stapleton and prior to your departure for Rochester, is that when you met Mr. Sanford Weaver?

"A Yes. We met him at the airport.

"Q  Did you introduce Mr. Don Bemel to Mr. Weaver at that time?

"A  Yes. I did.

"Q  What was said by Mr. Weaver to you in Don's presence, if anything?

"A  I talked to Weaver. I did introduce Don Bemel as being one of the Bemels of Bemel Associates, Incorporated, and that they were in the process of working out plans and specifications to erect a 100 room motor hotel to be erected in Rochester, Minnesota, and that we were going to go to Rochester this particular afternoon to obtain the necessary papers and see if we couldn't put the deal together for our mutual benefit.

"THE COURT: Whose mutual benefit?

"THE WITNESS: The Corporation's and Bemels."
Part of Bemel's testimony as to this facet of the case was:

"A  Yes. He said Mr. Weaver was to make a trip to Denver to discuss the setting up of Mr. Brown as President of the Inglis Mortgage Company office. I also had occasion to meet Mr. Sanford Weaver at Stapleton Airfield prior to our departure to Rochester.

"Q  You met with Mr. Weaver personally?

"A  Yes, I did, prior to our departure."
The record discloses that following Weaver's introduction to Bemel, Brown and Weaver stood a short distance away from Bemel and engaged in some discussion. Brown's testimony further reveals that he and Weaver had later been in New York City together attempting to procure the loan.

Also, I do not agree that for estoppel to apply here, as stated by the majority, "* * * *there must first of all be evidence that Brown was ostensibly an agent of Inglis* with apparent authority and that the alleged principal had knowledge of a reckless indifference as to the conduct of the so-called agent." (Emphasis added.) I so state because I do not agree that Bemel Associates had to show that Brown was Inglis's agent or ostensible

agent. Under the facts here all the plaintiffs in error had to do was to show that Inglis was estopped to deny the agency. This they did in a rather classic manner. The rule which I deem applicable to hold Inglis liable is not only the one quoted in the majority opinion from *Chamberlain v. Poe,* 127 Colo. 215, 256 P.2d 229 (1953), but must and should have coupled to it the further rule set out in *Burck v. Hubbard,* 104 Colo. 83, 89, 88 P.2d 955, 957-58 (1939) where we stated:

"\* \* \* The parties agree, and it is the law, 'That when one of two innocent persons must suffer from the acts of a third he must suffer who put it in the power of the wrongdoer to inflict the injury.' \* \* \*."

Accord: *Panhandle Pipe and Supply Co. v. Pressey & Son,* 125 Colo. 355, 243 P.2d 756 (1952); *Gordon v. Pettingill,* 105 Colo. 214, 96 P.2d 416 (1939).

In my view Inglis's conduct showed that it either had knowledge as to Brown's representations to Bemel Associates or at least its conduct showed a reckless indifference as to how Brown acted while operating from its office with its consent and knowledge. For these reasons I would reinstate the claim against Inglis and order the trial court to enter judgment thereon in the sum of $7,000 plus interest and costs in favor of Bemel; and also, I would order the reinstatement of Inglis's cross-claim and the entry of judgment thereon in its favor against Brown.