**VENTURE INVESTMENT CO., INC., and James M. McPeek, Plaintiffs-Appellees,**

v.

**Paul A. SCHAEFER, a/k/a Paul Schaefer, Individually and d/b/a Continental Schools of America, Defendants-Appellants.**

No. 72-1627.

United States Court of Appeals,
Tenth Circuit.

May 10, 1973.

Dale Yoakum, Denver, Colo., for defendants-appellants.

Bernard Dan Steinberg, Denver, Colo., for plaintiffs-appellees.

Before HILL and BARRETT, Circuit Judges, and SMITH,[*] District Judge.

HILL, Circuit Judge.

Venture Investment Company and its president, James M. McPeek, brought suit in Colorado federal district court against Paul A. Schaefer for fraudulent conduct and for violations of state and federal securities laws. Jurisdiction was founded on diversity of citizenship and the Securities Acts of 1933 and 1934.[1] The trial court, after hearing all the evidence, determined that Schaefer had violated the Colorado securities laws, and

---

[*] Honorable Talbot Smith, United States District Judge, Eastern District of Michigan, sitting by designation.

[1.] Securities Act of 1933, 15 U.S.C. §§ 77b(1), 77e, 77k, 77l, 77o, 77q, 77v;

Securities Act of 1934, 15 U.S.C. § 78c (a)(10) and (11); 78j, 78aa; Rule 10b-5 of the Securities Exchange Commission, 17 C.F.R. § 240.10b-5.

awarded plaintiffs $9,990 plus $1,000 attorneys fees.

Schaefer operated a correspondence school in Englewood, Colorado, titled Continental Schools of America (CSA). On January 2, 1970, Schaefer sent McPeek, a Kansas citizen, a letter offering him a franchise with CSA in the Dallas-Houston region of Texas. Because this letter was instrumental in convincing appellees to purchase CSA franchises, we will set it out in detail. The letter began by glorifying CSA's success in the correspondence business. It explained that CSA had been operating nearly 10 years and wrote up to $10,000 in business a month in an area no larger than the one intended for appellees. It suggested that appellees could reach that figure in as little as 60 days because CSA courses were "par excellence," as attested by its license from the Colorado State Board of Education. The letter stated the result would be that from a monthly investment of around $150, nearly $6,000 could be generated in school contracts. To demonstrate the potential of CSA franchises, three pages of sales and profit projections were attached.

Appellees responded favorably and received a second letter which again expounded the virtues of CSA. This letter remarked that CSA was directed by a team of experienced, successful businessmen; that in CSA's effort to insure success, it hired the finest talent available in the Western United States to prepare its home study courses; and that as a result, franchisees could expect to reap around 45% net profits on all fully collected contracts.

Along with the second letter Schaefer sent a CSA brochure. This brochure told of Schaefer's founding the company in 1959 and his making it a great success by selecting as his company officers businessmen who were officers and directors of successful companies prior to joining CSA. The brochure also stated that CSA unconditionally guaranteed a minimum sales quota. Finally, it asserted that CSA's marketing program was so timely and effective that profits were unlimited.

Appellee McPeek was interested in the franchise so he visited Schaefer in Denver, Colorado. In reliance upon the aforementioned correspondence and conversations with Schaefer and his agents, appellees purchased two franchise contracts for $10,700. The contracts granted appellees exclusive rights over the Dallas-Fort Worth and the Houston areas, plus an option over the San Antonio area.

At this point problems arose. Schaefer had promised to send a "sales training group" to assist appellees in their sales promotion, but no group appeared—only Schaefer. He did not make his forty sales as provided in the two contracts. At most he generated eleven sales, and even then he failed to send appellees their percentage from the sales. Several times Schaefer promised to help appellees rectify the existing problems, but this was never done.

Appellees finally gave up hope of ironing out their problems with Schaefer and sued in federal district court. Schaefer's testimony at trial indicated: that he did not know when the school was founded, but it became known as CSA in 1969; that CSA had no officers, but was a sole proprietorship owned by Schaefer; that no employees were directors of corporations prior to joining CSA, rather Schaefer used "director" to mean his employees directed the operations of other companys; and that his assertion in the letter of January 2, 1970, that a franchisee could reach figures of up to $10,000 in business a month within 60 days of start-up was based upon personal speculation rather than fact.

The trial court after hearing all evidence made the following relevant findings of fact: (1) CSA had been in business since 1969; (2) only eight other franchises had been sold and none enjoyed the monthly business promised by Schaefer; (3) the CSA courses had not been licensed by the State of Colorado; (4) CSA was basically a one-man operation and was not comprised of a team

of successful businessmen; (5) Schaefer did not intend personally to secure the first twenty enrollments on each franchise; and (6) Schaefer knew his representations were false and intended appellees to rely upon them. The trial court therefore concluded the "franchises" were securities within the meaning of Colorado securities laws [2] and were sold by use of misleading and untruthful statements.

■■ We agree with the findings of fact and result reached by the trial court, but adopt another approach in reaching the same conclusion. The trial court found Schaefer's misrepresentations to violate Colorado's securities laws. We do not feel it necessary to determine the applicability of either the Colorado securities laws or the federal Securities Acts when it is clear from the evidence that Schaefer perpetrated common law fraud on appellees. Fraud as developed in the Colorado common law requires: concealment or misrepresentation of a material fact by the perpetrator; indifference or knowledge of the misrepresentation by the perpetrator; representation or concealment made with the intention that it be acted upon; and action on the misrepresentation or concealment resulting in damages. Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458 (1937); Bemel Associates, Inc. v. Brown, 164 Colo. 414, 435 P.2d 407 (1967). All these elements are found in the present case. The evidence is replete with misrepresentations in Schaefer's correspondence with McPeek. Although the trial court commented on appellees' naiveté in taking Schaefer at face value, it nevertheless felt appellees relied on Schaefer's representations in good faith and we find no error in this conclusion. It is apparent from the record that Schaefer had no intention of making appellees' franchise a success. He promised them help in starting up the franchise but no real effort was made to follow through on this promise. Schaefer did generate a few enrollments but he failed to send appel-

lees their percentage. The overall picture was one of fraud with the primary purpose being to divest appellees of their money.

Affirmed.

2. Colorado Licensing and Practice Act, C.R.S.1963, 125–1–12 and 125–1–21.