539 P.2d 1362 (1975)
Henry A. MONTE VERDE (a/k/a Enrique A. or Henry A. Monteverde) and Mary E. Monte Verde (a/k/a Mary E. or Mary M. Monteverde), Plaintiffs-Appellants,
v.
James E. MOORE, Defendant-Appellee.
No. 74-433.
Colorado Court of Appeals, Div. I.
August 6, 1975.
*1363 Hindry & Meyer, P. C., Thomas J. Kerwin, John S. McGuire, Denver, for plaintiffs-appellants.
Robert P. Grueter, Peter G. Dillon, Aspen, for defendant-appellee.
Not Selected for Official Publication.
ENOCH, Judge.
Plaintiffs sued to recover damages allegedly sustained as a result of defendant's services rendered as a broker concerning a real estate transaction which occurred in Aspen some 26 years ago. Plaintiffs appeal from an adverse judgment. We affirm.
The pertinent facts are as follows. Defendant has lived in Aspen since 1936. Until the 1950's defendant worked as a barber. However, in the mid-1940's he obtained a real estate salesman's license and worked part time under a broker located in Glenwood Springs. In late 1948 or early 1949 defendant obtained his broker's license. At that time real estate values in Aspen were quite low, and abstracts often were not used in real estate transactions because the cost of an abstract often exceeded the fair market value of the real estate involved. Much of the real estate in Aspen was sold at tax sales during the 1940's, and many transactions were based on treasurer's deeds as the source of title.
In January of 1949 Mr. McHose and Mr. Haverty came to Aspen from Los Angeles to purchase some real estate as an investment in anticipation of an expected growth in the town. McHose and Haverty purchased their property through defendant. Upon their return to Los Angeles, McHose advised his sister, plaintiff Mary Monte Verde of their purchase and of the fact that town lots in Aspen were selling for $200 each. He enthusiastically recommended to his sister and her husband that they invest in some of the property. Plaintiffs expressed an interest in such an investment, and McHose wrote to defendant inquiring about lots near property which had previously been purchased by a friend of his. Defendant responded that there were two lots available which were held by Arling J. Caley. Caley's title interest was based on tax sale certificates *1364 for taxes from 1934 to 1945 on one lot and from 1924 to 1945 on the other.
Defendant requested a $50 down payment, which plaintiffs mailed. Defendant then paid the $50 to Caley plus the balance of the purchase price, $350, from his own money when he found that Caley demanded cash and was then in the mood to sell. Defendant obtained a quitclaim deed from Caley with the grantee space left blank and also obtained an assignment of Caley's two tax certificates with the assignee's space also blank. Subsequently, when plaintiffs forwarded the balance of $350 to defendant, the plaintiffs' names were filled in on the deed and the tax certificates. Defendant withheld his sales commission from the amount paid to Caley. He received no compensation from plaintiffs. In February 1949 defendant mailed the tax certificates to plaintiffs and recorded the quitclaim deed which was then forwarded to plaintiffs. Defendant requested the county treasurer to issue a treasurer's deed to plaintiffs but this was never done.
Plaintiffs paid taxes on the two lots from 1949 to 1970. Their first trip to Aspen was in 1954. In 1969 plaintiffs were joined as defendants in a quiet title action initiated by a third party claiming title to the lots in question. As a result of settlement negotiations, plaintiffs accepted $6,000 as payment in full for their entire interest in the property.
On February 1, 1972, plaintiffs brought this action alleging the defendant had either fraudulently or negligently misrepresented the state of title to the lots, that a fiduciary or confidential relationship existed between the parties, and that defendant had breached an express warranty of title. Plaintiffs sought damages for the difference between the price they received to settle and the market value of the property in 1971, plus the property taxes paid, exemplary damages, costs and attorneys' fees in the quiet title action.
A trial to the court was held September 17 and 18, 1973. At the close of the evidence the court concluded that defendant had not knowingly or intentionally made any misrepresentations, nor were plaintiffs justified in relying on any statements which he made. Consequently it found no liability for either fraudulent or negligent misrepresentation. The court further concluded that no confidential or fiduciary relationship existed between plaintiffs and defendant, and that, because defendant was not in the chain of title, his statements did not amount to an express warranty of title. Finally, it held that plaintiffs had failed to carry their burden of proof of damages. On appeal plaintiffs contend that the court erred on all of these points.

I.
Before reaching the merits of this appeal, we note defendant's contention that we should not consider the arguments of plaintiffs on appeal because they were not raised in the motion for new trial. The motion for new trial does contain only a general assignment of error, but defendant admits that a supporting memorandum was filed which contained more specific allegations of error. While this memorandum is not included in the record on appeal, there does appear the transcript of plaintiffs' argument at the hearing on the motion for new trial which makes clear that the attention of the trial court was directed to the issues raised now on appeal, and which we proceed to review. See Hamilton v. Gravinsky, 28 Colo.App. 408, 474 P.2d 185, modified on other grounds, 174 Colo. 206, 483 P.2d 385.

II.
Plaintiffs allege that the trial court erred in holding that plaintiffs did not establish a case of fraudulent misrepresentation by defendant. We disagree.
The evidence relied on by plaintiffs is contained in two letters written by defendant to plaintiffs. Plaintiffs quote from the letters that defendant said the *1365 lots "will have an exceptionally good title" and that the title was "as good as gold" and further that defendant represented that he had "checked" and that there was no lien against the lots. However, other portions of the letters must be considered to evaluate the significance of these statements. Defendant also wrote in the first letter that: "Being as there is actually no title of record I think the best thing to do is to get [the seller] sober someday, and I don't know for sure when that might be, but have him deed them to me and therefore have an established record of title. (Those lots were listed as unknown and still are)." In the last paragraph of the letter defendant said:
"He [the seller] doesn't realize how good this title is really and is really a fine fellow and a good friend of mine. I've told him that the title was as good as gold on all his property and that he would be safe on giving a warranty on all of it."
In light of the limiting statements made by defendant, the unavailability of accurate record information at that time, defendant's efforts to check out the title with the county treasurer, and the limited experience of defendant in title matters, there is ample evidence to support the trial court's conclusion that plaintiffs failed to prove that defendant made any representations to them without an honest belief that they were true or without a basis for believing them to be true. See Bemel Associates, Inc. v. Brown, 164 Colo. 414, 435 P.2d 407; Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458; Colorado Jury Instructions 19:1.
Furthermore, to be entitled to recover damages as a result of any misrepresentations by defendant, plaintiffs must be justified in relying on defendant's representations. And in this regard, the standard of "justified reliance" is not whether a reasonably prudent man would be justified in relying, but whether the particular individual had the ability and right to so rely. See Zimmerman v. Loose, 162 Colo. 80, 425 P.2d 803.
The trial court found that examination of the representations made by defendant as to title "were so conflicting as to raise in the mind of any reasonable person, even if not experienced in real estate matters, substantial questions as to the quality of title." (emphasis added) Thus, contrary to the contention of plaintiffs, the trial court did not apply a reasonably prudent man test, but rather took into consideration the inexperience in real estate matters testified to by the plaintiffs, and there is no evidence that plaintiffs were not otherwise of normal intelligence, education, and experience. See Colorado Jury Instructions 19:8.
Plaintiffs also raised a claim of negligent misrepresentation relying on Restatement (Second) of Torts § 552 (Tent. Draft No. 12, 1966). Even if we were to apply this theory as stated in the Restatement Second, we note that it requires justifiable reliance on the part of plaintiffs, and as already indicated the trial court found on evidence in the record that this element was not met for either misrepresentation claim.

III.
Plaintiffs further allege that the court erred in holding that there was no confidential or fiduciary relationship between the parties. Defendant testified that he was the agent of Caley, the seller, and it is undisputed that his commission was deducted from the purchase price paid the seller. Although there is conflicting testimony concerning the relationship of the parties, the conclusion of the trial court will not be disturbed where, as here, it has support in the evidence. Adler v. Adler, 167 Colo. 145, 445 P.2d 906.

IV.
The plaintiffs contend that the court erred in holding that defendant made no express warranty of title since defendant was not in the chain of title. Plaintiffs admit that this theory assumes that defendant, not Caley, was the true seller of the property. The evidence as recited earlier *1366 in this opinion makes it quite clear that defendant was not the seller. Therefore, the court was correct in its ruling.
We have considered the other alleged error and find it also to be without merit.
Judgment affirmed.
COYTE and BERMAN, JJ., concur.