The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 17, 2025

## 2025COA40

**No. 24CA0725, *Sanchez v. Rains Precision Motorsports, Inc.* — Vehicles and Traffic — Motor Vehicle Repair Act of 1977 — Repairs on a Motor Vehicle**

A division of the court of appeals addresses, for the first time in a published decision by a Colorado appellate court, issues pertaining to the construction and application of Colorado's Motor Vehicle Repair Act of 1977, §§ 42-9-101 to -113, C.R.S. 2024.

Court of Appeals No. 24CA0725
Arapahoe County District Court No. 22CV31708
Honorable Thomas W. Henderson, Judge

Juan Sanchez,

Plaintiff-Appellee,

v.

Rains Precision Motorsports, Inc., d/b/a Rains Precision Motorsports L.L.C.,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Brown and Yun, JJ., concur

Announced April 17, 2025

S&D Law, Angela D. DeVine, Denver, Colorado, for Plaintiff-Appellee

Earl & Earl, PLLC, Collin J. Earl, Ryan T. Earl, Brian E. Hefner, Colorado
Springs, Colorado, for Defendant-Appellant

¶ 1 Defendant, Rains Precision Motorsports, Inc. (RPM), appeals the district court's judgment in favor of plaintiff, Juan Sanchez, following a jury trial on Sanchez's claims for violations of Colorado's Motor Vehicle Repair Act of 1977 (CMVRA), §§ 42-9-101 to -113, C.R.S. 2024, and negligence. We affirm.[1] In doing so, we address for the first time in a published decision by a Colorado appellate court issues pertaining to the construction and application of the CMVRA.

---

[1] To the extent RPM attempts to appeal the district court's order denying its motion for summary judgment, we can't review that order because, under circumstances like those in this case, such an order isn't appealable. *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1249-50 (Colo. 1996).

## I.    Background

¶ 2    Sanchez owned a 2003 Chevy Silverado truck.  In August 2021, Sanchez replaced the truck's camshaft.[2]  But soon after, the truck's engine started to make an unusual noise.  Sanchez tried to fix the problem on his own but couldn't.  He brought his truck to RPM for repairs and replacements of parts (including the muffler, which had fallen off) the following month.  Sanchez supplied some of the replacement parts himself.  RPM estimated that the repairs

---

[2]

> A camshaft is a rod which rotates and slides against a piece of machinery in order to turn rotational motion into linear motion.  This change of motion is accomplished by the camshaft moving further and closer from the axis of rotation as the camshaft is pushed by the machinery.  These moving pieces of the shaft are the cams. . . .  A camshaft on an internal combustion heat engine is a device that controls both the input of fuel and the expulsion of exhaust fumes.  It consists of several radial cams, each displacing intake or exhaust valves.  This camshaft is connected to the crankshaft via belt, chain or gears.  This ensures consistent timing of the valves in relation to the motion of the pistons.

Energy Education, *Camshaft*, https://perma.cc/X5XZ-PACV; *see also* Cambridge Dictionary, https://perma.cc/PV7Z-X9W9 (A camshaft is "a device that causes the valves of an engine to open or close at the correct time.").

and replacements would cost $6,000, which Sanchez agreed to pay. (Sanchez paid $1,040 up front.)

¶ 3     Several months passed without any word from RPM on the status of Sanchez's truck.  In late December 2021, RPM called Sanchez to tell him that the truck was ready and that the repairs would cost about $12,040, which was approximately $6,000 more than the previously agreed-to amount.  When Sanchez went to retrieve his truck the next day, however, it wasn't ready because the repairs to the exhaust system hadn't been performed.  Nonetheless, he agreed to pay the $12,040 and allowed RPM to finish the repairs.

¶ 4     In March 2022, RPM told Sanchez that it had completed the repairs, so Sanchez picked up his truck.  But during the drive home, the truck started to make another unusual noise, this time from the torque converter, which RPM had installed.  RPM told Sanchez he should bring the truck back to be checked.  Sanchez brought the truck back, and RPM thereafter retained possession of it until March 29, 2022 — when someone stole the truck from RPM's lot.

¶ 5     Sanchez recovered his truck in August 2022.  One month later, he filed suit against RPM.  His complaint alleged that RPM

violated section 42-9-104(2)(a)(I), C.R.S. 2024, of the CMVRA (requiring a repair facility to provide the customer with an estimated date of completion), and section 42-9-105(1), C.R.S. 2024, of the CMVRA (requiring a repair facility to gain the customer's consent before conducting work for which it will charge the customer that isn't included in the original estimate). The complaint also alleged that RPM was negligent under a bailment theory, alleging that it failed to exercise reasonable care to protect Sanchez's truck from theft. Sanchez sought damages of $7,611 on his CMVRA claim and $13,000 (the alleged value of his vehicle) on his negligence claim.

¶ 6 RPM filed a motion for summary judgment, which the district court denied. After a two-day trial, the jury determined that RPM violated the CMVRA and was negligent. The jury awarded Sanchez $7,611 on the CMVRA claim and $8,216.36 on the negligence claim. The court trebled the damages on the CMVRA claim to $22,833. *See* § 42-9-113, C.R.S. 2024.

¶ 7 RPM filed a motion for judgment notwithstanding the verdict (JNOV), arguing that the CMVRA's protections for customers didn't apply to RPM's work on Sanchez's truck and that insufficient

evidence supported the jury's negligence verdict.  The district court denied RPM's motion.

## II.    Discussion

¶ 8        RPM contends that the district court erred by denying its motion for JNOV because (1) the CMVRA doesn't apply to RPM's work on Sanchez's truck and (2) the jury's negligence verdict isn't supported by sufficient evidence.  We address, and reject, both contentions in turn.

### A.    Applicability of the CMVRA

¶ 9        RPM contends that the CMVRA doesn't apply to the work it did on Sanchez's truck because (1) that work constituted, in RPM's view, "modifications or enhancements to the performance" of the truck, which aren't covered by the CMVRA; and (2) parts it installed on the truck — at Sanchez's behest — rendered the truck "not legal for street use," meaning the truck was not "intended primarily for use and operation on the public highways," as required by section 42-9-102(2)(a), C.R.S. 2024, of the CMVRA.

#### 1.    Standard of Review

¶ 10        We review de novo the district court's denial of RPM's motion for JNOV.  *Boulders at Escalante LLC v. Otten Johnson Robinson*

*Neff & Ragonetti PC*, 2015 COA 85, ¶ 19.  The facts relevant to RPM's contentions are essentially undisputed; its contentions raise legal issues implicating the CMVRA's application.  We review such issues de novo.  *Id.*

¶ 11    When interpreting a statute, we must give full effect to the legislature's intent, looking to the plain language of the statute.  *Welcome to Realty, LLC 401k PSP v. Wilson*, 2024 COA 122, ¶ 11.  In doing so, we "read[] the language in the dual contexts of the statute as a whole and the comprehensive statutory scheme, giving consistent, harmonious, and sensible effect to all of the statute's language."  *Id.* (quoting *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15).

## 2.    Analysis

¶ 12    The CMVRA governs the responsibilities of "motor vehicle repair facilities" in conducting business with customers.  These responsibilities include, but are not limited to, providing estimates and disclosures to customers before beginning work, providing regular updates on "repairs," and receiving consent before work begins.  *See* §§ 42-9-104 to -106, C.R.S. 2024.  Sanchez claimed, and the jury found, that RPM didn't live up to these responsibilities.

6

¶ 13     Section 42-9-102(5) defines "[r]epairs on a motor vehicle" or "repairs" as including "maintenance, diagnosis, repairs, service, and parts replacement."[3]

¶ 14     RPM contends initially that the work it performed on Sanchez's truck didn't qualify as "repairs," but rather as "modifications and enhancements."  Apparently, RPM reasons that because the aftermarket parts it installed in the truck — specifically, the camshaft, exhaust system parts, and torque converter — merely made the truck's engine louder and more powerful, it didn't make "repairs."  But RPM misconstrues the record evidence relating to the reasons for the work it performed. Viewing that evidence in the light most favorable to the jury's verdict, *see Boulders at Escalante LLC*, ¶ 19, we conclude that RPM performed work constituting "repairs" within the meaning of the CMVRA.  When Sanchez brought the truck to RPM, certain parts weren't functioning properly or were missing.  Sanchez first sought

---

[3] The definition of "[r]epairs on a motor vehicle" or "repairs" in section 42-9-102(5), C.R.S. 2024, uses the term "repairs" as a category of "repairs" but doesn't define "repairs" as used *within* the definition.

out RPM to address an unusual noise coming from his truck after he had failed to fix the problem himself and to replace the muffler that had fallen off.  And after RPM conducted its initial work, Sanchez brought the truck back because the torque converter RPM had installed was making noise.

¶ 15    The bottom line is that the truck had problems that needed to be fixed for it to run properly.  RPM's work to fix those problems fits squarely within the commonly understood meaning of "repairs." *See* Merriam-Webster Dictionary, https://perma.cc/QV9S-8SFG (defining "repair" as "to restore by replacing a part or putting together what is torn or broken").[4]  Also, much of RPM's work on the truck was "parts replacement," which is expressly included in the definition of "repairs on a motor vehicle."  Though Sanchez

---

[4] RPM relies on *Diamond F Cattle & Farm, LLC v. Diesel Doctor, Inc.*, No. 2016CV30038, 2018 WL 5880186, at *6 (Colo. Dist. Ct. Aug. 1, 2018) (unpublished order), in which a district court determined that modifications to a vehicle weren't included in the definition of "repairs" in section 42-9-102(5).  Of course, we aren't bound by *Diamond F*.  But in any event, *Diamond F* is distinguishable.  The truck in that case was brought into a repair facility solely for the purpose of making improvements to the truck's competitive performance.  The truck was intended to be used as a competition truck.  *Id.*  In this case, Sanchez brought his truck into RPM for ordinary repairs and intended to use his truck on the public highways.

provided replacement parts to RPM, RPM's installation of those replacement parts was unquestionably "parts replacement."

¶ 16    To the extent RPM contends that, because the parts Sanchez provided were aftermarket parts that increased the engine's sound and performance, they weren't replacement parts within the meaning of the CMVRA, it cites no authority restricting the meaning of "parts replacement" to exclude such parts.  And we may not impose limitations on statutory terms that the statute's language doesn't plainly suggest.  *See Sooper Credit Union v. Sholar Grp. Architects, P.C.*, 113 P.3d 768, 772 (Colo. 2005); *Gonzales v. City & Cnty. of Denver*, 998 P.2d 51, 54 (Colo. App. 1999), *aff'd*, 17 P.3d 137 (Colo. 2001).

### b.    "Motor Vehicle"

¶ 17    The CMVRA defines a "[m]otor vehicle" as "every self-propelled vehicle intended primarily for use and operation on the public highways."  § 42-9-102(2)(a).  Significantly, the CMVRA exempts from that definition "[t]rucks . . . having a gross vehicle weight of more than eight thousand five hundred pounds."  § 42-9-102(2)(b)(I).

9

¶ 18    RPM argues that Sanchez's truck isn't a "motor vehicle" under the CMVRA.  It reasons that the repairs it conducted at Sanchez's request — replacing the camshaft and creating a custom exhaust system — rendered the truck "not legal for street use," under 42 U.S.C. § 7522(a)(3)(A) (prohibiting a person from removing or rendering inoperative "any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [certain air pollution] regulations"), section 42-4-225, C.R.S. 2024 (prohibiting modification of an exhaust system to amplify the noise emitted by the motor above the level emitted by the original muffler), and section 42-4-314, C.R.S. 2024 (barring anyone from rendering inoperable an automobile's factory-installed air pollution control system), thereby taking the truck outside the CMVRA's definition of "motor vehicle."[5]  RPM misconstrues that definition.

¶ 19    Plainly, Sanchez's 2003 Chevy Silverado SS truck was, when manufactured and sold, classified as a "motor vehicle" under the CMVRA.  It is a type of vehicle intended "for use and operation on the public highways," § 42-9-102(2)(a), and it weighs less than eight

---

[5] RPM doesn't point to any evidence in the record that the exhaust system was actually rendered "inoperable."

thousand five hundred pounds, § 42-9-102(2)(b).  *Cf. Shaw v. Aurora Mobile Homes & Real Est., Inc.*, 539 P.2d 1366, 1368 (Colo. App. 1975) (a mobile home is a "movable structure," not a "motor vehicle," because it is designed for residential purposes, not highway travel).  Sanchez's intended use didn't change when he had RPM repair his truck and replace some of its parts; he intended to use it, and did use it, to travel the public highways.  Whether Sanchez could do so lawfully under the statutes on which RPM relies is beside the point.  The statutory definition of "motor vehicle" focuses on the intended use of the vehicle and doesn't incorporate the "street legal" requirement urged by RPM.  *See Gonzales*, 998 P.2d at 54 (we won't read a limitation into a statute that the plain language doesn't suggest, warrant, or mandate).

¶ 20    In sum, because Sanchez brought his truck to RPM for "repairs" and "parts replacement," and the truck was "intended primarily for use and operation on the public highways," the district court didn't err by denying RPM's JNOV motion on this basis.

## B.    Negligence

¶ 21    RPM next contends that it was entitled to judgment as a matter of law on Sanchez's negligence claim because the evidence is

11

insufficient to support the jury's verdict finding that RPM was negligent and the jury's determination of damages. We disagree.

### 1. Standard of Review

¶ 22     "Issues of negligence . . . are questions of fact to be determined by the [fact finder], and we will not overturn its decision on those questions where there is competent evidence from which the [fact finder] could have logically reached its verdict." *Vititoe v. Rocky Mountain Pavement Maint., Inc.*, 2015 COA 82, ¶ 36; *see also Boulders at Escalante*, ¶ 19 (When a motion for JNOV "concerned a question of fact, we consider whether the evidence, viewed in the light most favorable to the nonmoving party, compels the conclusion that reasonable jurors could not disagree and that no evidence or inference therefrom had been received at trial upon which a verdict against the moving party could be sustained."). Likewise, "[t]he amount of damages is generally a question of fact, the resolution of which is vested in the finder of fact." *Scognamillo v. Olsen*, 795 P.2d 1357, 1360 (Colo. App. 1990).

## 2. Analysis

¶ 23 Viewing the evidence in the light most favorable to the verdict, we conclude that sufficient evidence supports the jury's findings of negligence and damages.

### a. Insufficient Preventative Measures

¶ 24 The district court correctly instructed the jury that "[n]egligence means a failure to do an act which a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect (oneself or) others from property damage." The jury answered "yes" to the special verdict form question, "Was [RPM] negligent in failing to return the truck to [Sanchez]?"

¶ 25 RPM argues that, because its owner testified that Sanchez's truck was the first vehicle stolen from RPM's lot, and RPM locked the doors of Sanchez's truck and put the keys inside a lockbox in RPM's locked office, there wasn't any evidence that it acted negligently. But we conclude that there was evidence from which the jury could have reasonably concluded that Sanchez met his burden of proving by a preponderance of the evidence, *see Kiefer Concrete, Inc. v. Hoffman*, 562 P.2d 745, 748 (Colo. 1977) (a plaintiff

must prove negligence by a preponderance of the evidence), that RPM didn't take sufficient care to prevent theft of vehicles on its lot.

¶ 26 RPM's owner testified to several instances of theft on and around its premises. He testified that "literally thousands" of vehicles had been stolen from the parking lot of an apartment complex next door; in February 2021, the police arrested individuals who had been attempting to steal vehicles from RPM's lot; and "lots" of items other than cars (including "hundreds of thousands of dollars of parts" and things inside customers' cars on the lot) had been stolen from RPM's lot over the years, even though RPM had taken some measures to prevent such thefts. Based on this evidence that theft was frequently occurring on and around RPM's place of business, a jury could have reasonably concluded that vehicle theft on its premises was foreseeable. And RPM's owner admitted at trial that RPM increased its security measures after Sanchez's truck was stolen. These measures include positioning the vehicles in a way that makes it difficult for them to be taken off the lot, using a better surveillance system, and

scheduling work so that vehicles are on the lot for less time.[6]  The jury could have reasonably concluded that RPM could and should have taken these measures — or other similar measures — before the theft, and that its failure to do so was negligent.

### b.     Damages

¶ 27     RPM also contends that the evidence was insufficient to support the jury's damages award of $8,216.36 on the negligence claim.  Specifically, RPM asserts that there wasn't any evidence that Sanchez suffered any damages because he recovered his truck and didn't prove any diminution in its value as a result of the theft.  Again, we disagree.

¶ 28     "Although an award of damages cannot be based on mere speculation or conjecture, once the fact of damage has been established with the requisite degree of certainty, uncertainty as to the amount of damages will not bar recovery."  *Tull v. Gundersons,*

---

[6] RPM's attorney elicited this testimony about what measures RPM took following the theft of Sanchez's truck.  And RPM doesn't challenge the admissibility of this testimony on appeal.  Therefore, we don't address whether this testimony could have been inadmissible under CRE 407, which governs evidence of subsequent remedial measures.  It follows that we may consider this testimony in assessing the sufficiency of the evidence.

*Inc.*, 709 P.2d 940, 943 (Colo. 1985). "It is sufficient if the plaintiff establishes by a preponderance of the evidence that he has in fact suffered damage . . . and that his evidence in this regard provides a reasonable basis for a computation of the damage so sustained." *Id.* at 943-44 (quoting *Riggs v. McMurtry*, 400 P.2d 916, 919 (Colo. 1965)).

¶ 29     Sanchez testified, without objection, that to his knowledge, and according to the Kelley Blue Book, his truck was valued at $13,000 in good condition. When he recovered it, however, the truck had been altered and was inoperable. Significant changes had been made to the inside and outside of the truck, the stereo had been taken, and the ignition was broken. (Sanchez also introduced exhibits showing the changes.) Although Sanchez didn't testify to the exact diminution in the truck's value, there was sufficient evidence from which the jury could reasonably have estimated the loss.[7]

---

[7] The jury wrote on the verdict form "(6500 ½ value of truck) ($1716.36 repair ignition)." RPM introduced an exhibit at trial — Exhibit 107 — showing that Sanchez paid $1,716.36 to have the ignition fixed.

## III. Attorney Fees on Appeal

¶ 30 Sanchez requests an award of his attorney fees incurred on appeal. In a civil action to enforce the CMVRA, a court may award reasonable attorney fees and costs to the prevailing party. § 42-9-113. Because we have affirmed the judgment on Sanchez's CMVRA claim, we grant his request. *See Francis v. Steve Johnson Pontiac-GMC-Jeep, Inc.*, 724 P.2d 84, 87 (Colo. App. 1986). We exercise our discretion under C.A.R. 39.1 to remand the case to the district court for it to determine the reasonable amount of Sanchez's fees incurred on appeal to defend the judgment on his CMVRA claim.

## IV. Disposition

¶ 31 The judgment is affirmed. We remand the case to the district court for it to determine the reasonable amount of attorney fees Sanchez incurred on appeal to defend his judgment on the CMVRA claim.

JUDGE BROWN and JUDGE YUN concur.