SaBELL'S, INC., a Colorado Corporation, Petitioner,

v.

Jane FLENS and Louise Oldham, Respondents.

No. 79 SC 194.

Supreme Court of Colorado, En Banc.

April 27, 1981.

David L. Kofoed, P. C., Scott R. Larson, Denver, for petitioner.

Thomas J. de Marino, Michael J. Barbo, Denver, for respondent Flens.

Hall & Evans, Gail A. Laxalt, Richard A. Hanneman, Denver, for respondent Oldham.

DUBOFSKY, Justice.

Appellant SaBell's, Inc., a nursery, sued Jane Flens and Louise Oldham for damages incurred when a horse, owned by Flens and boarded by Oldham, ate trees and shrubs which were part of SaBell's nursery stock. The trial court granted a judgment on the pleadings in favor of Flens and Oldham, ruling that SaBell's claim was barred by its failure to maintain a lawful fence in accordance with section 35–46–101, *et seq.*, C.R.S. 1973, the Colorado Fence Law.[1] The Court of Appeals affirmed the trial court's judgment, 42 Colo.App. 421, 599 P.2d 950 (1979), and we affirm the judgment of the Court of Appeals.

SaBell's alleges two errors in the rulings below: first, that the Colorado Fence Law was not meant to apply in metropolitan areas, and second, that SaBell's should have been allowed to amend its complaint in response to the defendants' assertion of the Fence Law as an affirmative defense. The Court of Appeals chose not to address SaBell's first contention. Instead it held that, accepting as true SaBell's allegation that Oldham had negligently erected and maintained the fence, the provision of the Fence Law requiring maintenance of a lawful fence by the complainant as a condition precedent to recovery precluded an award of damages.

We granted certiorari to consider whether the Fence Law is meant to apply in metropolitan areas, an issue left unexamined by the Court of Appeals' majority opinion. *See SaBell's, Inc. v. Flens, supra* (Berman, J., dissenting opinion). Although zoned for agricultural uses including stock raising, both SaBell's and Oldham's properties are inside Lakewood's city limits, not far from the Villa Italia Shopping Center.

The Colorado Fence Law, section 35–46–102, C.R.S. 1973, originally enacted in the latter part of the 19th century, makes the maintenance of a "lawful fence," as defined in section 35–46–101, C.R.S. 1973, a condition precedent to recovery of damages caused by trespassing livestock. *Schaefer v. Mills*, 72 Colo. 82, 209 P. 643 (1922). The statute modified the common law doctrine which held the owner of trespassing livestock strictly liable for their trespasses on the lands of others. *See Morris v. Fraker*, 5 Colo. 425 (1880); 4 *Am. Jur.2d Animals* § 49 (1962); *see also* W. Prosser, *Torts* § 76, at 496–498 (4th ed. 1971).

> "The policy of the [fence] law is to favor stock owners, and to permit them to range their stock at large. The duty of protecting crops is placed upon the farmer."

*Schaefer v. Mills, supra,* 72 Colo. at 84, 209 P. at 644.

SaBell's argues that the open range policy of the Fence Law conflicts with section 35–47–101, C.R.S. 1973, which provides:

---

1. Section 35–46–102(1), C.R.S. 1973 provides:
   "(1) Any person maintaining in good repair a lawful fence, as described in section 35–46–101, may recover damages for trespass and injury to grass, garden or vegetable products, or other crops of such person from the owner of any livestock which break through such fence. No person shall recover damages for such a trespass or injury unless at the time thereof such grass, garden or vegetable products, or crops were protected by such a lawful fence...."

Section 35–46–101(1) and (2) are the relevant definitional sections:
   "(1) 'Lawful fence' is a well-constructed three barbed wire fence with substantial posts set at a distance of approximately twenty feet apart, and sufficient to turn ordinary horses and cattle, with all gates equally as good as the fence, or any other fence of like efficiency....
   (2) 'Livestock' includes horses, cattle, mules, asses, goats, sheep, swine, buffalo, and cattalo."

"It is unlawful for any owner or the agent, lessee, bailee, or employee of such owner of any horses or mules, to knowingly permit any of said animals to *run at large,* within a distance of ten miles from any city having one hundred thousand or more population...."

(Emphasis added.) The Court of Appeals' dissenting opinion cites section 35–47–101 as evidence of the General Assembly's intent to exempt metropolitan areas from the Fence Law, noting that a similar result was reached by the Supreme Court of Wyoming. *Sowers v. Corthell,* 69 Wyo. 215, 240 P.2d 891 (1952).

However, from oral argument and our review of the briefs and record we have learned that there is no evidence that the horse which inflicted the damage was running at large. At argument counsel for Oldham quoted the deposition of Wallace H. SaBell, president of SaBell's, Inc., describing the horse as leaning over Oldham's fence and eating "his last morsel of tree."[2] Counsel for SaBell's did not contradict this statement of the facts.

In the absence of evidence that Flens' horse was running at large within the meaning of section 35–47–101, we need not now decide whether that statute carves out a limited, metropolitan-area exemption to the provisions of the Fence Law.[3] Here, Flens' horse was boarded in a fence-enclosed pasture. Under these circumstances we see no reason to disturb the Court of Appeals' ruling that the trial court properly entered judgment on the pleadings.

Judgment affirmed.

---

2. The deposition was not made a part of the record in this case, and no affidavits setting forth factual matters were filed.

3. We leave for another day the question whether a metropolitan-area property owner whose grass, garden or vegetable products are damaged by a horse or mule running at large must prove maintenance of a "lawful fence," section 35–46–102(1), as a condition precedent to recovery of damages.