**MERRILL LYNCH PIERCE FENNER & SMITH, INC., William J. Grace, Jr., Appellants,**

v.

**Rolando and Anita Ong CHENG, Appellees.**

**No. 89–7169.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 22, 1990.

Decided April 27, 1990.

Jeffrey P. Bloom, Metzger, Gordon & Scully, Washington, D.C. was on the brief, for appellants.

Joel M. Finkelstein, Finkelstein & Curtis, Washington, D.C., was on the brief, for appellees.

Before SENTELLE, Circuit Judge, ROBINSON and TIMBERS,[*] Senior Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge TIMBERS.

TIMBERS, Senior Circuit Judge:

Appellants Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and William J. Grace, Jr. appeal from an order entered June 19, 1989, in the District Court for the District of Columbia, Royce C. Lamberth, *District Judge*, which directed a verdict in favor of appellees Rolando and Anita Ong Cheng (hereinafter, "the Chengs", "Dr. Cheng" or "Cheng") on their counterclaim and third-party complaint alleging breach of fiduciary duty.

This diversity action was commenced by Merrill Lynch to recover monies allegedly owed by the Chengs as a result of certain

---

[*] Of the United States Court of Appeals for the Second Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

securities transactions in the Chengs' options account with Merrill Lynch. The Chengs responded by filing a counterclaim against Merrill Lynch and a third-party complaint against their broker Grace, an employee of Merrill Lynch, for breach of fiduciary duty, negligence and fraud.

After being informed that the jury was hung, the district court, upon reconsideration, granted the Chengs' motion for a directed verdict on the breach of fiduciary duty count, and entered judgment against appellants in the amount of $96,264. It held, as a matter of law, that appellants breached their fiduciary duty by purchasing options on the Chengs' behalf without authorization and that the Chengs did not ratify the unauthorized transactions. For the same reasons, the court denied Merrill Lynch's motion for a directed verdict and dismissed its complaint.

On appeal, appellants assert that: (1) the district court erred in holding that they owed fiduciary duties to the Chengs; (2) the issue whether they breached fiduciary duties should have been submitted to the jury; (3) the issue whether the Chengs ratified the unauthorized transactions should have been submitted to the jury; and (4) the court improperly denied their motion for a directed verdict.

For the reasons which follow, we affirm the order of the district court in all respects.

## I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

This diversity action arises from purchases of IBM options in May 1986 by Rolando and Anita Ong Cheng through their stockbroker, William J. Grace, Jr., an employee of Merrill Lynch. In May 1985, Dr. Rolando Cheng, an orthopedic surgeon residing in Ashland, Kentucky, had called Grace and indicated that he was interested in opening an account with him. Shortly thereafter, Grace opened an account for the Chengs at the Merrill Lynch office in Washington, D.C. During the one year period between May 1985 and April 1986, the Chengs' portfolio grew from $34,000 to approximately $300,000.

On March 16, 1986, the Chengs signed a Merrill Lynch options agreement. Between April 1986 and May 1986, Dr. Cheng engaged in several IBM options transactions. The dispute here involved arose out of transactions entered into on May 5, 1986. That morning, Dr. Cheng called Grace to discuss the possibility of buying more IBM options. He explicitly instructed Grace to purchase additional options, but "only if his account could afford it." Due to a computer malfunction, Grace received incorrect information as to whether the Chengs' account could afford additional purchases. He overbought the account by about $119,000.

Upon reaching Dr. Cheng the evening of May 6, Grace advised him that Merrill Lynch had made a mistake and had overbought the options for his account "per his instructions that previous morning." Instead of informing Dr. Cheng, however, that he had the right to reject the unauthorized transactions, Grace told him:

> "Look, we still like IBM. We still think IBM is going to do well. There are two things we can do. We can sell out of these things or you can go ahead and keep the positions and send more money in."

In other words, Dr. Cheng was given two choices: either sell the options at a loss since the price of the options had gone down since the purchase date or send in money to cover the $119,000 debit and hope the price would go up. In addition, Grace informed Dr. Cheng that, if he did not meet the margin call, Merrill Lynch would have to liquidate his positions.

According to Grace, Dr. Cheng instructed him to sell off the remaining stocks in the account to reduce the debit and indi-

cated that he would send additional funds. Dr. Cheng sent $40,000, which was received by Merrill Lynch on May 12, 1986. Upon receiving no additional funds from Dr. Cheng, Merrill Lynch eventually closed out his remaining positions.

As a result of these transactions, Merrill Lynch claimed that the Chengs owed the firm $28,614.06 plus interest and, in September 1986, commenced an action against the Chengs. The Chengs responded by filing a counterclaim against Merrill Lynch and a third-party complaint against Grace, for breach of fiduciary duty, negligence and fraud. The district court denied appellants' pretrial motions for summary judgment on the Chengs' counterclaim and third-party complaint, but granted their motions to dismiss a securities fraud count.

The trial of the case before a jury began on June 12, 1989. During trial, both parties moved for directed verdicts, which the court denied in each instance. The jury began its deliberations on June 16, but returned on June 19, indicating that it was unable to agree on a verdict. The court then invited motions by both parties to reconsider their respective motions for directed verdicts.

Based on the evidence adduced at trial and in the light of arguments by counsel for the Chengs, the court granted the Chengs' motion for a directed verdict as to the breach of fiduciary duty count of the amended counterclaim and the third-party complaint. The court entered judgment in favor of the Chengs in the amount of $96,264 as against Merrill Lynch on the counterclaim and against Grace on the third-party complaint. It denied Merrill Lynch's motion for a directed verdict and dismissed its complaint. It ruled that, even though the Chengs' account with Merrill Lynch was a non-discretionary one, Grace owed "certain minimal fiduciary duties to his client, which include the duties to follow his client's instructions, to act only with prior authorization, and to exercise fair dealing in relation to his client." Since appellants purchased the IBM options in violation of Cheng's explicit instructions to Grace, the court concluded that, as a matter of law,

appellants breached their fiduciary duty to the Chengs. It further held that appellants breached their duty of fair dealing by failing to notify the Chengs of their right to disavow the unauthorized options and by misleading them into believing that they had only two available courses of action: sell the options (at a loss) or meet the margin call. Finally, the court held that, as a matter of law, the Chengs did not ratify the unauthorized transactions because they were not fully informed of all of their reasonable choices.

This appeal followed.

## II.

Our standard of review of the district court's order directing a verdict has been settled for many years. We must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences favorable to that party, to determine whether reasonable jurors could reach but one conclusion. *Alden v. Providence Hosp.*, 382 F.2d 163, 165 (D.C.Cir. 1967).

## III.

With the foregoing in mind, we turn to the principal issue on appeal: the scope of a broker's duties to his customer.

### (A)

Subject matter jurisdiction is predicated on the diverse citizenship of the parties. 28 U.S.C. § 1332 (1988). The parties do not dispute that the law of the District of Columbia governs the disposition of this appeal.

Appellants contend that they did not owe a fiduciary duty to the Chengs because their account with Merrill Lynch was "nondiscretionary". While admitting that Grace, as a stockbroker, breached a duty to transact business only with prior authorization, appellants claim that such duty is not a fiduciary one. That duty, they assert, is based merely on "a general standard of care in the industry". Moreover, although they do not dispute that the Chengs had the right to reject the unauthorized trans-

actions, they claim that Grace did not have a duty to inform the Chengs of such right, since it is a matter of common knowledge that a customer may reject trades he does not order. We disagree. We hold that basic principles of agency law control here and that those principles required Grace to inform the Chengs of their right to reject the unauthorized options.

■ The district court found that the Chengs' account with Merrill Lynch was "non-discretionary". With respect to a non-discretionary account, the customer must give prior approval for all transactions. *Hotmar v. Lowell H. Listrom & Co.*, 808 F.2d 1384, 1385 (10th Cir.1987); *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F.Supp. 951, 952 (E.D. Mich.1978). A broker handling such an account has certain duties, including "the duty not to misrepresent any fact material to the transaction" and "the duty to transact business only after receiving prior authorization from the customer". *Id.* at 953 (listing broker's duties with respect to a non-discretionary account).

A "discretionary" account, on the other hand, is one in which the broker determines which investments to make and carries out such transactions without prior authorization. *Hotmar, supra,* 808 F.2d at 1385; *Leib, supra,* 461 F.Supp. at 953. We are mindful that other courts have held that, while a broker handling a discretionary account has a fiduciary duty to his customer, there is no such duty with respect to a non-discretionary account. *E.g., Commodity Futures Trading Comm'n v. Heritage Capital Advisory Services, Ltd.,* 823 F.2d 171, 173 (7th Cir.1987); *Caravan Mobile Home Sales v. Lehman Bros. Kuhn Loeb,* 769 F.2d 561, 567 (9th Cir.1985); *Leboce, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F.2d 605, 607 (9th Cir. 1983); *Shearson Hayden Stone, Inc. v. Leach,* 583 F.2d 367, 371–72 (7th Cir.1978); *Leib, supra,* 461 F.Supp. at 953; *but see Moholt v. Dean Witter Reynolds, Inc.,* 478 F.Supp. 451, 453 (D.D.C.1979) (brokers are quasifiduciaries "held to a high degree of trustworthiness and fair dealing").

We need not address the question whether the law in the District of Columbia is the same. We believe that the disposition of the instant appeal turns on the application of basic principles of agency law as recognized by the District of Columbia.

■ A broker is an agent who owes his principal a duty to act only as authorized. *R. Baruch and Co. v. Springer,* 184 A.2d 206, 208 (D.C.Mun.App.1962); Restatement (Second) of Agency § 383 (1958). As an agent, he has a duty to deal in the principal's interest. *Urban Investments, Inc. v. Branham,* 464 A.2d 93, 96 (D.C. 1983); Restatement, *supra,* at §§ 13, 387; *see also Leib, supra,* 461 F.Supp. at 952–53 (with respect to a non-discretionary account, "the broker is bound to act in the customer's interest when transacting business for the account"). Moreover, he has a duty to give his principal information which is relevant to affairs entrusted to him of which he has notice. *E.g., Vicki Bagley Realty, Inc. v. Laufer,* 482 A.2d 359, 364–65 (D.C.1984) (real estate agent obligated to inform the principal of every development affecting his interest, including facts known to agent concerning prospective purchaser's financial difficulties); *Glekas v. Boss & Phelps, Inc.,* 437 A.2d 584, 588–89 (D.C.1981) (even if agency agreement did not specifically provide, management agents breached assumed duty to property owners to notify them of approaching expiration date of insurance policy); *Int'l Underwriters, Inc. v. Boyle,* 365 A.2d 779, 783 (D.C.1976) (an agent has "a duty to disclose to [his principal] any knowledge he obtained which was relevant to his agency relationship with [the principal]"); *Yelen v. Banks,* 146 A.2d 569, 571 (D.C.Mun.App. 1958) (an agent is bound "to disclose to his principal all relevant information coming to his knowledge"); *see also* Restatement, *supra,* § 381 & comment a ("duty exists if [the agent] has notice of facts which, in view of his relations with the principal, he should know may affect the desires of his principal as to his own conduct or the conduct of the principal"). That obligation is enhanced where, as here, the agent has developed an interest inconsistent with that of the principal. *Cf. Leib, supra,* 461

F.Supp. at 954 (in dealing with a non-discretionary account, fiduciary duties are imposed where the broker assumes control over the account by acting without the customer's prior authorization).

In the instant case, Grace purchased the IBM options here involved in direct violation of Dr. Cheng's explicit instructions. Under District of Columbia law, Grace had the duty fully to disclose all material facts regarding the unauthorized transactions. Whether or not that duty be characterized as a fiduciary one, Grace was obligated to advise Dr. Cheng of all reasonable courses of action and not just those that inured to Grace's benefit. While that duty may be difficult to categorize, reasonable persons would agree, as a simple matter of fairness, that there is such a duty. *See* Restatement, *supra*, § 13 comment a (agent has "duty to deal fairly with the principal in all transactions between them"); *cf. Achilles v. New England Tree Export Co.*, 369 F.2d 72, 74 (2d Cir.1966) (Medina, J.) ("call this particular ... judgment what one will, it does substantial justice and we will not disturb it").

The district court found that Grace breached this duty by failing to advise Dr. Cheng of his right to reject the unauthorized IBM options and by "affirmatively misle[ading]" him into believing that he had only two choices: sell the options (at a loss) or meet the margin call. Viewing the evidence in the light most favorable to appellants, we agree.

We hold that appellants breached their duty to inform the Chengs of their right to disavow the unauthorized trades and that the district court properly directed a verdict in favor of the Chengs.

### (B)

As a final matter, we reject appellants' contention that the evidence, viewed in the light most favorable to them, establishes that Dr. Cheng was a sophisticated investor who was aware of all of his choices and voluntarily chose to ratify the trades here involved. Ratification occurs only when the customer, with full knowledge of the facts, manifests his intention to adopt the unauthorized transaction. *Lewis v. Washington Metropolitan Area Transit Authority*, 463 A.2d 666, 671 (D.C.1983). Since the Chengs were not advised of their right to reject the unauthorized trades, we agree with the district court that, as a matter of law, there could not have been ratification. Restatement, *supra*, § 416 (ratification is not a defense when principal "is caused to ratify by the misrepresentation ... of the agent"); *see also Nye v. Blyth Eastman Dillon & Co.*, 588 F.2d 1189, 1197 (8th Cir.1978).

### IV.

To summarize:

We hold, as a matter of law, that appellants breached their duty to advise the Chengs of their right to disavow the unauthorized trades here involved. We also hold, as a matter of law, that the Chengs did not ratify those trades. Accordingly, we hold that the district court properly granted the Chengs' motion for a directed verdict and properly entered judgment in their favor.

Affirmed.