**George J. SIENER, Plaintiff–Appellant,**

**v.**

**Joyce ZEFF, as personal representative of the Estate of Kalman Zeff, and Carmel Companies, Inc., Defendants–Appellees.**

**No. 07CA1929.**

Colorado Court of Appeals,
Div. VII.

Aug. 21, 2008.

McReynolds Law, LLC, Gregg McReynolds, Greenwood Village, Colorado, for Plaintiff–Appellant.

Senter Goldfarb & Rice, L.L.C., Arthur J. Kutzer, Jason L. Walker, Denver, Colorado, for Defendants–Appellees.

Opinion by Chief Judge DAVIDSON.

In this personal injury action, plaintiff, George J. Siener, appeals from the summary judgment dismissing with prejudice his complaint against defendants, Joyce Zeff, as Personal Representative of the Estate of Kalman Zeff, and Carmel Companies, Inc. We reverse and remand with directions.

## I. Background

This case arises out of an automobile accident between plaintiff and Kalman Zeff, now deceased. Siener retained an attorney, who filed a complaint on his behalf. Soon after, the attorney settled the claim with Zeff's insurer, The Hartford, for $25,000. The attorney did so without Siener's knowledge or consent, and, when the settlement check was subsequently sent to the attorney's office, the attorney cashed it and absconded with the proceeds.

When Siener later learned from The Hartford that the attorney had settled the action and stolen the proceeds, Siener filed a pro se claim under C.R.C.P. 252 with the Colorado Attorneys' Fund for Client Protection (Fund) for $25,000. The Fund paid the claim in full. Siener acknowledged the payment, cashed the check, and kept its proceeds.

Approximately a year later, Siener hired a new attorney who filed a motion to reinstate Siener's personal injury case against defendants, which the trial court granted. Defendants then moved to dismiss the complaint on the grounds, inter alia, that Siener had subrogated his rights to claims against third parties to the Fund and, furthermore, that by accepting the $25,000, Siener had ratified the unauthorized settlement with The Hartford.

The trial court, considering the pleadings and exhibits submitted by the parties, treated the motion as one for summary judgment, granted it, and dismissed the case. The court determined that Siener had "[a]ssigned [his] rights against any third party" by filing his $25,000 claim for reimbursement with the Fund. It further agreed with defendants that Siener had ratified the unauthorized settlement when he accepted the $25,000. This appeal followed.

Summary judgment is a "drastic remedy," only appropriate if the pleadings, affidavits, depositions, or admissions show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Civil Serv. Comm'n v. Pinder,* 812 P.2d 645, 649 (Colo.1991); *Kellum v. RE Servs., LLC,* 30 P.3d 875, 876 (Colo.App.2001). In

the court's determination whether summary judgment is proper, the nonmoving party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts must be resolved against the moving party. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 83 (Colo.1999).

We review a grant of summary judgment de novo. *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 71 (Colo.2004).

II. Other Than the $25,000, and Related Costs, Siener's Personal Injury Damages Claim Was Not Transferred, Subrogated, or Assigned to the Fund

■ C.R.C.P. 252.14(b), which governs a claimant's transfer, subrogation, and assignment of a claim to the Fund, states:

> As a condition of payment, a claimant shall be required to provide the [F]und with a transfer of the claimant's rights up to the amount paid by the Fund against the attorney, the attorney's legal representative, estate or assigns; and of the claimant's rights against any third party or entity who may be liable for the claimant's loss.

The language is mirrored in the subrogation agreement signed by Siener when he submitted his claim to the Fund.

Interpreting C.R.C.P. 252.14(b), and the corresponding language in the subrogation agreement, the trial court determined that, by accepting compensation from the Fund, Siener "[a]ssigned [his] rights against any third party," and that "[t]he 'third party' was The Hartford, *vis-à-vis* Defendant in the present case." Siener contends the trial court erred in reaching that determination. We agree.

■ The Colorado Rules of Civil Procedure are subject to the rules of statutory construction. *Crawford v. Melby,* 89 P.3d 451 (Colo.App.2003); *see also Watson v. Fenney,* 800 P.2d 1373, 1375 (Colo.App.1990). We give the words of a rule their plain meaning, construing them as a whole to give consistent, harmonious effect to all its parts. *Anheuser Busch, Inc. v. Indus. Claim Appeals Office,* 28 P.3d 969, 970 (Colo.App. 2001); *see also Int'l Paper Co. v. Cohen,* 126 P.3d 222, 226 (Colo.App.2005). To ascertain the intent of the supreme court in promulgating its rules, we also must consider the language in proper context, as well as the reason and necessity of the rule and the objective that it seeks to accomplish. *In re Marriage of Eisenhuth,* 976 P.2d 896, 899 (Colo.App.1999); *see also Klinger v. Adams County School Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006) (regarding statutory interpretation, "[w]e read words and phrases in context and construe them literally according to common usage unless they have acquired a technical meaning by legislative definition"); *cf. Carl's Italian Restaurant v. Truck Ins. Exchange,* 183 P.3d 636, 639 (Colo.App.2007) ("In determining whether a term is ambiguous, we must consider the term in the context of the [insurance] policy as a whole.").

Contrary to the trial court's reading of the rule, C.R.C.P. 252.14(b) refers to transfer, subrogation, and assignment of a claimant's rights, not against "any third party," but against third parties "who may be liable for the claimant's loss." Furthermore, C.R.C.P. 252.10(a) provides, in turn, that in order to constitute an eligible claim, a loss "must be caused by the dishonest conduct of the attorney." Under the rule, "dishonest conduct" is then limited to wrongful acts committed by attorneys "in the nature of theft or embezzlement of money or the wrongful taking or conversion of money, property or other things of value." *See* C.R.C.P. 252.10(c).

Thus, while settling a client's claim without authority may be dishonest behavior, in the context of C.R.C.P. 252 regarding the Fund, a recoverable "loss" is exclusively a claimant's pecuniary harm resulting from his or her attorney's wrongful taking of the claimant's money, property, or other thing of value. And C.R.C.P. 252.14(b) requires a claimant to provide the Fund with a transfer of any rights against third parties arising from that statutorily defined and limited loss, not from a loss arising from other circumstances.

Here, Siener's "loss" under Rule 252 was the $25,000 stolen by his attorney. To the extent Siener is also attempting to recover the "true value" of his personal injury claim arising out of his car accident with defen-

dants, contrary to the trial court, we conclude that claim was not transferred, subrogated, or assigned to the Fund under C.R.C.P. 252.14(b), or, for the same reasons, under the terms of the corresponding subrogation agreement.

### III. Ratification of the Unauthorized Settlement

The trial court also granted summary judgment in favor of defendants on the basis that Siener, through his acceptance of the $25,000 from the Fund as reimbursement for the stolen settlement proceeds, ratified the settlement agreement entered into by his former attorney and The Hartford.

Siener contends summary judgment was improper, arguing that the evidence did not show he knowingly adopted and confirmed the act of his attorney and, thereby, ratified the unauthorized settlement. We agree and conclude that there is a genuine issue of fact as to whether Siener knew that, by taking the $25,000 from the Fund, he was agreeing to be bound by the unauthorized settlement.

### A. Unauthorized Settlements Must Either be Timely Repudiated or Ratified

■ A settlement is effectively a contract to end judicial proceedings. In order for it to be binding and enforceable, there must be a "meeting of the minds" as to the terms and conditions of the settlement. *See Cross v. Dist. Court.,* 643 P.2d 39, 41 (Colo.1982) (quoting *H.W. Houston Constr. Co. v. Dist. Court,* 632 P.2d 563, 565 (Colo.1981)).

■ An attorney does not have the authority to compromise and settle the claim of a client without his or her knowledge and consent. *See Cross,* 643 P.2d at 41. Thus, generally, a client is not bound by a settlement agreement made by an attorney when the lawyer has not been granted either express or implied authority. *Radosevich v. Pegues,* 133 Colo. 148, 152, 292 P.2d 741, 743 (1956).

■ However, because there is at least one other party involved in a settlement (who, in the absence of further action or proceedings on the claim against it, is entitled to rely on the fact that the case has been resolved), when a client discovers that an attorney has "settled" his claim without authority, the client must either timely repudiate the settlement and proceed with the lawsuit or ratify the settlement as an acceptable bargain. *See Gordon v. Pettingill,* 105 Colo. 214, 217, 96 P.2d 416, 417 (1939) (failure to repudiate agent's acts or delay in repudiating may result in ratification); *Thomas v. Mahin,* 76 Colo. 200, 205, 230 P. 793, 794 (1924) (act of plaintiff's attorney in filing a suit without authority was ratified when plaintiff subsequently conveyed his interests in property at issue in suit to another for payment and did not take steps to dismiss the case).

### B. Requirements for Ratification of an Unauthorized Settlement

■■ The attorney-client relationship is that of principal and agent. *Weigel v. Hardesty,* 37 Colo.App. 541, 543, 549 P.2d 1335, 1337 (1976) ("an attorney is the agent of his client"). Ratification by a principal of an unauthorized action by an agent is the "adoption and confirmation by one person with knowledge of all material facts, of an act or contract performed or entered into in his behalf by another who at the time assumed without authority to act as his agent." *Nunnally v. Hilderman,* 150 Colo. 363, 367–68, 373 P.2d 940, 942 (1962) (quoting *Black's Law Dictionary* (4th ed.)).

A person ratifies an act by either "(a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *See* Restatement (Third) of Agency § 4.01(2) (2006); *see also id.* § 4.01(2) cmt. c ("The agency-law doctrine of ratification . . . requires manifesting assent or otherwise consenting to a prior act done by another person and thereby adopting its legal consequences.").

"[T]he focal point of ratification is an observable indication that the principal has exercised choice and has consented" to having his or her legal relations affected. *See id.* § 4.01(2) cmt. d.; *id.* § 4.06 cmt. d ("Ratification is the consequence of a choice freely made by the principal."); *see also Lucareli v. Lucareli,* 237 Wis.2d 487, 614 N.W.2d 60, 64–

65 (App.2000) (manifestation of assent does not ratify a prior act if its content is inconsistent with approval of act).

To exercise choice and consent, a principal must have full knowledge of all material facts of the transaction prior to the ratification, or at least knowledge of facts that would lead a reasonable person to investigate further. *See Hauser v. Rose Health Care Systems,* 857 P.2d 524, 529 (Colo.App. 1993); *see also Adams v. Paine, Webber, Jackson & Curtis, Inc.,* 686 P.2d 797, 801 (Colo.App.1983) (full knowledge is essential before a party will be held to ratify the acts of his agent), *aff'd,* 718 P.2d 508 (Colo.1986); Restatement (Third) of Agency § 4.06 cmt. d ("A factfinder may conclude that a principal has made [a choice to ratify an action without knowing all material facts] when the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further....").

Defendants contend that, as a matter of law, Siener ratified the unauthorized contract in each of three possible ways: by (1) accepting the benefits of his attorney's unauthorized settlement through receipt of the Fund's $25,000; (2) using the unauthorized settlement as grounds for making his claim with the Fund; and (3) failing to repudiate the settlement. We disagree.

### 1. Acceptance of the Benefits

Ratification may occur if a principal accepts the benefits resulting from the unauthorized act. *See New Mexico Potash & Chemical Co. v. Oliver,* 123 Colo. 268, 277, 228 P.2d 979, 983 (1951); *M. S.P. Industries, Inc. v. Diversified Mortgage Services, Inc.,* 777 P.2d 237, 238 (Colo.App.1989); *Lewis v. Martin,* 30 Colo.App. 342, 348, 492 P.2d 877, 881 (1971). This was the gravamen of the trial court's finding of ratification as a matter of law, that is, that Siener accepted the $25,000 as repayment from the Fund.

However, as discussed, a principal must know that accepting the benefits of the initially unauthorized act constitutes ratification, and, here, the trial court's ruling does not reflect consideration of whether Siener knew that, by taking the Fund money, the

purpose of which is to mitigate losses caused by the dishonest conduct of attorneys, he was actually settling his underlying personal injury claim with defendants. *See Lawyers' Fund for Client Protection v. Bank Leumi Trust Co.,* 94 N.Y.2d 398, 706 N.Y.S.2d 66, 727 N.E.2d 563, 568 (2000) (holding no ratification occurred when defrauded client accepted funds from state bar client protection fund because client "merely agreed to take an award that was immediately available and allow the Fund to pursue further remedies"); *Coates v. Drake,* 131 Mich.App. 687, 346 N.W.2d 858, 861–62 (1984) (plaintiffs' remedy of recovering absconded settlement amount from the client security fund "[i]s not sufficient to prevent injustice, since plaintiffs never agreed to or ratified that settlement figure as representing adequate compensation for their claim"); *cf. Alvarado Community Hospital v. Superior Court,* 173 Cal.App.3d 476, 219 Cal.Rptr. 52, 55–56 (1985) (holding, under nearly identical facts, that issue of whether ratification occurred was one of first impression and, therefore, court's decision warranted only prospective application. "To deny [client] her day in court because of the cumulative effect of [attorney's] thievery, her second counsel's error, and her own naivete borders on the unconscionable.").

### 2. Legal Action Based on the Unauthorized Settlement

Ratification may also occur when a client, with full knowledge of the material facts, brings a lawsuit or bases a defense on the unauthorized compromise made by his agent. *See Levand v. North America Realty Co.* 82 Colo. 121, 126, 257 P. 355, 357 (1927); *Lyon v. Washburn,* 3 Colo. 201, 204 (1877) ("the action is founded upon this transaction, and is an effectual ratification of the agency which [attorney for plaintiff] then assumed"); *Central, Inc. v. Cache Nat'l Bank,* 748 P.2d 351, 354–55 (Colo.App.1987).

However, in doing so, the principal must understand that, by instituting such a suit, he is essentially adopting and confirming his agent's actions and the resultant legal consequences. Such understanding would usually be inferred simply by the filing of a complaint or answer. But, unlike the typical

scenario where a principal files a court pleading in an action involving at least one of the parties involved in the unauthorized settlement (either the principal's agent or a third party), here, by filing a claim with the Fund, Siener was not filing a court pleading in an action involving either his former attorney or The Hartford.

### 3. Failure to Timely Repudiate the Settlement

■■■ A principal's failure or delay in repudiating an agent's actions may ratify the action. *See Gordon,* 105 Colo. at 217, 96 P.2d at 417. But the principal must have notice or be aware of the consequences of failing to repudiate. *See In re Marriage of Seely,* 689 P.2d 1154, 1160 (Colo.App.1984) (C.R.C.P. 60 motion for relief from judgment, filed after the six-month deadline, was nevertheless filed within a reasonable time given plaintiff's "ignorance of her legal rights" and lack of counsel when the agreement was entered into); *see also* Restatement (Third) of Agency § 401 cmt. f ("A principal may ratify an act by failing to object to it or to repudiate it.... Failure to object may constitute such a manifestation when the person has notice that others are likely to draw such an inference from silence."); *see Merrill Lynch Pierce Fenner & Smith, Inc. v. Cheng,* 901 F.2d 1124, 1129 (D.C.Cir.1990) (ratification of an unauthorized act requires that the principal know that the unauthorized transaction may be disaffirmed); *Huppman v. Tighe,* 100 Md.App. 655, 642 A.2d 309, 314–16 (Spec.App.1994) (same). Here, Siener applied to the Fund and accepted its reimbursement without an attorney's advice, and there is nothing in the record to show he was aware of the option to repudiate the settlement.

### C. Whether Siener Ratified the Settlement is Disputed

■■■ Ratification, and its requirement of knowledge, is a question of fact. *Lewis v. Martin,* 30 Colo.App. at 348, 492 P.2d at 881. The burden of showing ratification with full knowledge of all material facts generally is on the party alleging it. *See Film Enterprises, Inc. v. Selected Pictures, Inc.,* 138

Colo. 468, 478, 335 P.2d 260, 265 (1959) (as applied to corporate contracts); *see also* Restatement (Third) of Agency § 4.06 cmt. b ("The burden of establishing that a ratification was made with knowledge is on the party attempting to establish that ratification occurred.").

Thus, here, in order to constitute a ratification of an unauthorized settlement as a matter of law, there must be undisputed evidence demonstrating that Siener knew that he would not be entitled to the monies he was accepting unless he affirmed the settlement, or that the claim brought before the Fund would be considered a suit to enforce the unauthorized settlement, or that he could obtain relief by timely repudiating the settlement.

However, defendants' contentions notwithstanding, the evidence as to whether Siener had the requisite knowledge to constitute ratification of his attorney's unauthorized settlement is unclear:

- Siener did not request the trial court to set aside the settlement as void. *See* C.R.C.P. 60(b); *In re Adoption of P.H.A.,* 899 P.2d 345, 346 (Colo.App. 1995). However, Siener was not represented by counsel until after he submitted his claim to the Fund, and the limited record on summary judgment does not show whether he was aware of the option to repudiate the settlement. *See In re Marriage of Seely,* 689 P.2d at 1160; *Cheng,* 901 F.2d at 1124; *Huppman,* 642 A.2d at 315–16.

- The Hartford told Siener that its position was that "[a] settlement was consummated and [Siener was] therefore barred from any further recovery from The Hartford or [their] insured." But Siener had notified The Hartford that the settlement was unauthorized and he intended to pursue his claims.

- Siener wrote, in his application to the Fund for reimbursement, "The attorney settled ... without my permission [and] I never agreed to settle the claim for the amount ($25,000) or at that time." He also wrote: "I feel this attorney has seri-

ously compromised any anticipated and acceptable settlement sought from [The] Hartford Insurance. I am still being treated for my injuries [and] expect additional surgery." But, upon receiving his check for the Fund, Siener sent a letter to the Fund, acknowledging receipt of $25,000 as full reimbursement for his claim submitted to the Fund, and kept the $25,000.

- Siener failed to explain to the trial court in his motion to reinstate his complaint that he had applied for and received reimbursement of the amount of the unauthorized settlement from the Fund, or that he intended to return it or, at a minimum, place it in escrow pending the outcome of the litigation. But Siener stated in his pleadings that he believed reimbursement from the Fund was merely recovery of a penalty against his attorney and unrelated to his damages suffered as a result of his car accident with Zeff.

- In his response to defendants' motion to dismiss, Siener attached an affidavit prepared by regulation counsel in the discipline proceeding against Siener's attorney, which stated, "I am informed that, in November 2005, without my knowledge or consent, respondent [attorney] settled my claim for $25,000." In the same affidavit, however, Siener referred to the payment that his attorney absconded with as "[m]y portion of the settlement proceeds."

- Nothing in C.R.C.P. 252 or in the corresponding subrogation agreement signed by Siener indicated that acceptance of reimbursement from the Fund would act as a ratification of the unauthorized settlement of Siener's claims. Additionally, no Colorado appellate opinion has previously addressed a situation sufficiently similar to Siener's to justify imputing knowledge of such an effect to Siener.

Thus, from this ambiguous record, we cannot conclude as a matter of law that, by submitting a claim to the Fund and accepting the Fund's check, Siener made an informed choice to be legally bound by his attorney's unauthorized actions and, consequently, thereby be barred from pursuing his personal injury claim. *See Pinder,* 812 P.2d at 649; *Kellum,* 30 P.3d at 876; *Bebo Constr. Co.,* 990 P.2d at 83.

Accordingly, we must reverse the summary judgment and remand the case to the trial court for reinstatement of Siener's complaint. Because of the particular circumstances here, we specifically instruct the trial court to resolve pretrial the issue of ratification. If ratification is deemed to have occurred, this action is to be dismissed as settled pursuant to the settlement agreement entered into by Siener's former attorney and The Hartford. The trial court order dismissing the action would be subject to appeal. If ratification is deemed not to have occurred, Siener may elect to pursue this action only upon the condition that the $25,000 received from the Fund is placed in an interest bearing escrow account, with the monies to be distributed following the final resolution of this action. Any distribution of the monies held in escrow shall be carried out in accordance with the following conditions: (1) in the event defendants prevail, and Siener is awarded no monetary damages, The Hartford shall be awarded the monies held in escrow, (2) in the event Siener is awarded monetary damages, exclusive of costs, equal to or in excess of $25,000, the monies held in escrow shall be awarded to Siener with The Hartford receiving an offset against its liability to Siener in a corresponding amount, and (3) in the event Siener is awarded monetary damages, exclusive of costs, in an amount greater than zero and less than $25,000, Siener shall be awarded that amount from the monies held in escrow, and The Hartford shall be awarded the balance of the monies held in escrow, as well as an offset against its liability to Siener in an amount equal to that received by Siener from the escrow account.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge NEY * and Judge RULAND * concur.