2012 COA 214

**BSLNI, INC., a Colorado corporation, Plaintiff–Appellee,**

v.

**RUSS T. DIAMONDS, INC., a Colorado corporation, Defendant–Appellant.**

No. 11CA2078.

Colorado Court of Appeals.

Dec. 6, 2012.

Foster Graham Milstein & Calisher LLP, Daniel K. Calisher, Chip G. Schoneberger, Christopher P. Carrington, Denver, CO, for Plaintiff–Appellee.

McConaughy & Sarkissian, P.C., Ivan A. Sarkissian, Derek E. Long, Englewood, Colorado, CO, for Defendant–Appellant.

Opinion by Judge MILLER.

¶ 1 Defendant, Russ T. Diamonds, Inc., appeals the trial court's judgment in favor of plaintiff, BSLNI, Inc. Diamonds contends that (1) the trial court should have awarded

attorney fees and costs when it dismissed BSLNI's tort claim and (2) the trial court should have granted Diamonds' pretrial motion to dismiss, motion for directed verdict, and motion for judgment notwithstanding the verdict, because BSLNI failed to provide expert testimony on the professional standard of care in proving its breach of contract claim against Diamonds. We affirm.

## I. Background

¶ 2 BSLNI orally contracted with Diamonds to cut concrete from the deck of a bridge into sections so that BSLNI could remove the concrete in blocks. While performing the cutting, Diamonds caused damage to several of the bridge's girders. BSLNI brought an action against Diamonds, alleging that the damage to the girders resulted from Diamonds' negligence. Diamonds filed an answer and litigated the case for nearly one year. On the evening before the scheduled trial, Diamonds filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to C.R.C.P. 12(b)(5). In the motion, Diamonds asserted that BSLNI's negligence claim should be dismissed under the economic loss rule. See Town of Alma v. AZCO Construction, Inc., 10 P.3d 1256, 1264 (Colo.2000). It also argued that the presentation of the motion on the eve of trial was permitted by C.R.C.P. 12(h)(2), and it requested costs and attorney fees pursuant to sections 13–16–113(2) and 13–17–201, C.R.S.2012.

¶ 3 The trial court expressed dissatisfaction that Diamonds filed its motion literally on the eve of trial, explaining that it could

> [d]eny defendant's motion to dismiss as untimely, proceed to trial, and end up directing a verdict against plaintiff ... or, alternatively, continue the trial, allow plaintiff to respond in writing to defendant's motion to dismiss and, if need be, permit plaintiff to amend its complaint to add a breach of contract claim.

"Observing the standards for a motion to dismiss under C.R.C. P. 12(b)(5)," the trial court in a written order dismissed the negligence claim with prejudice, but also granted BSLNI leave to amend the complaint to add a claim for breach of contract within five days. The court also granted Diamonds' request to add a counterclaim and denied Diamonds' request for attorney fees and costs "under the unique facts of this case."

¶ 4 BSLNI amended its complaint to add a breach of contract claim, and Diamonds filed an answer which included a counterclaim for breach of contract. At trial, BSLNI presented evidence that Diamonds agreed to cause only minor damage to the girders, but in performing the contract Diamonds caused major damage. A jury found in favor of BSLNI on its breach of contract claim and awarded it $58,380 in damages.

## II. Attorney Fees

### A. Background

¶ 5 Diamonds argues that the trial court erred in failing to award costs and attorney fees pursuant to sections 13–16–113(2) and 13–17–201 upon dismissing BSLNI's negligence claim. Diamonds contends that, although the trial court granted BSLNI leave to amend its complaint and add a contract claim, the court dismissed BSLNI's entire "tort action" when it dismissed the negligence claim, which was the sole claim in BSLNI's original complaint. BSLNI argues that Diamonds' motion was not properly filed under Rule 12(b) because Diamonds had already filed a responsive pleading, and therefore, the fees and cost statutes did not apply. We agree with BSLNI and conclude that Diamonds' motion should have been treated as a motion for judgment on the pleadings under C.R.C.P. 12(c). Therefore, BSLNI's tort claim was not dismissed under Rule 12(b), and the trial court did not err when it denied Diamonds' motion for attorney fees and costs.

### B. Standard of Review

¶ 6 We review the trial court's interpretation of statutes and the rules of civil procedure de novo. McIntire v. Trammell Crow, Inc., 172 P.3d 977, 980 (Colo.App.2007) (statutes); Keenan v. Gregg, 192 P.3d 485, 487 (Colo.App.2008) (rules).

### C. Analysis

#### 1. Statutory Analysis

¶ 7 When construing a statute, we seek to ascertain and effectuate the intent of the General Assembly. *State v. Nieto*, 993 P.2d 493, 500 (Colo.2000). Initially, we look to the language of the statute, and give words and phrases effect according to their plain and ordinary meaning. *Robbins v. People*, 107 P.3d 384, 387 (Colo.2005).

Section 13–17–201 provides, in pertinent part:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

Similarly, section 13–16–113(2), using virtually identical language, provides for awarding costs upon a C.R.C.P. 12(b) dismissal.

■ ¶ 8 Thus, under the plain language of the statutes, the trial court must award attorney fees and costs under sections 13–16–113(2) and 13–17–201 when it dismisses the entire action pursuant to Rule 12(b). *See First Interstate Bank v. Berenbaum*, 872 P.2d 1297, 1302 (Colo.App.1993) (reversing award of attorney fees pursuant to section 13–17–201 where the court dismissed one tort claim pursuant to Rule 12(b) and granted summary judgment on the other tort claim, because the statute applies "only when an action has been dismissed under C.R.C.P. 12(b)") (emphasis omitted). Because sections 13–16–113(2) and 13–17–201 are in derogation of common law, they must be strictly construed. *Sotelo v. Hutchens Trucking Co.*, 166 P.3d 285, 287 (Colo.App.2007). Therefore, we interpret the meaning of the statutory language "under rule 12(b)" narrowly, and will only uphold an award of fees when an action is properly dismissed pursuant to C.R.C.P. 12(b).

#### 2. Analysis of C.R.C.P. 12

¶ 9 "The Colorado Rules of Civil Procedure are subject to the rules of statutory construc-tion." *Siener v. Zeff*, 194 P.3d 467, 470 (Colo. App.2008). We therefore must give the words their plain meaning and construe them as a whole, giving consistent, harmonious effect to all parts of the rule. *Id.* We also consider the language in its proper context, in addition to "the reason and necessity of the rule and the objective that it seeks to accomplish," in order to ascertain the intent of the supreme court in promulgating the rule. *Id.*

■ ¶ 10 Both Diamonds and the trial court erroneously characterized Diamonds' motion as made pursuant to C.R.C.P. 12(b)(5). Such motions must be filed before a responsive pleading:

> Every defense, in law or in fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third-party claim, shall be asserted in a responsive pleading thereto if one is required, except that the following defenses ... may be made by motion: ... (5) failure to state a claim upon which relief can be granted.... A motion making any of these defenses *shall be made before pleading* if a further pleading is permitted.

C.R.C.P. 12(b) (emphasis added). The word "shall" indicates an obligation. *Kidder v. Chaffee County Bd. of Equalization*, —— P.3d ——, ——, 2011 WL 5437499 (Colo.App. 2011). Thus, the plain language of the rule precludes a party from filing a motion under C.R.C.P. 12(b)(5) after filing a responsive pleading.

■ ¶ 11 Under C.R.C.P. 12(h)(2), a party may subsequently seek to dispose of a claim for failure to state a claim upon which relief may be granted by, among other things, moving for judgment on the pleadings. Such a motion is made pursuant to C.R.C.P. 12(c), and may be filed "[a]fter the pleadings are closed." C.R.C.P. 12(c). Thus, when filed after an answer, a defendant's motion to dismiss for failure to state a claim upon which relief can be granted is properly addressed as a motion for judgment on the pleadings under C.R.C.P. 12(c). *See Sa-Bell's, Inc. v. Flens*, 42 Colo.App. 421, 424, 599 P.2d 950, 952 (1979), *aff'd*, 627 P.2d 750 (Colo.1981); *see also* 5B Charles Alan Wright

& Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 408 (3d ed. 2004) ("a post-answer Rule 12(b)(6) [the federal counterpart to C.R.C.P. 12(b)(5) ] motion is untimely and the cases indicate that some other vehicle, such as a motion for judgment on the pleadings ... must be used to challenge the plaintiff's failure to state a claim") (citing cases). Diamonds' motion, which was filed after it filed an answer, should therefore have been deemed a motion for judgment on the pleadings under C.R.C.P. 12(c).

■ ¶ 12 This interpretation is consistent with the purposes of C.R.C.P. 12(b). C.R.C.P. 12(b)(5) motions are intended to test the sufficiency of the complaint and to "permit *early* dismissal" of meritless claims. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911, 915 (Colo.1996) (emphasis added). These purposes are not served here, where the motion to dismiss was filed on the evening before trial, after extensive litigation, nearly one year after Diamonds filed its answer.

■ ¶ 13 The standard for judgment on the pleadings is "essentially consistent with that employed in resolving a motion to dismiss." *See Colorado Criminal Justice Reform Coalition v. Ortiz*, 121 P.3d 288, 294 (Colo.App.2005). We therefore conclude that it was proper for the trial court to grant judgment on the pleadings on BSLNI's negligence claim, although it mischaracterized the motion as a C.R.C.P. 12(b)(5) motion to dismiss. *Cf. Shaw v. City of Colorado Springs*, 683 P.2d 385, 387 (Colo.App.1984) (affirming dismissal of claims where "[d]efendant's motion was denominated a 'Motion to Dismiss'" but "more accurately constituted a motion for judgment on the pleadings, which was converted to a motion for summary judgment" because the trial court applied the standards of C.R.C.P. 56 "despite its use of an incorrect appellation").

■ ¶ 14 Diamonds argues, for the first time in its reply brief, that section 13–17–201 applies whenever a tort claim is dismissed pursuant to any section of C.R.C.P. 12. In support of this argument, Diamonds points out that a division of this court recently stated that the fees statute applies to any dismissal "under the auspices of any provision of C.R.C.P. 12." *Crow v. Penrose–St. Francis Healthcare System*, 262 P.3d 991, 996 (Colo.App.2011).

¶ 15 We reject this argument for three reasons. First, granting a motion for judgment on the pleadings under C.R.C.P. 12(c) is a grant of judgment in favor of a party and not a "dismissal" under C.R.C.P. 12. Second, when read in context, the quoted language from *Crow* clearly refers to dismissals under C.R.C.P. 12(b) only. In *Crow*, the division held that the application of section 13–17–201 was not limited to "baseless tort claims" dismissed under C.R.C.P. 12(b)(5), but that it also applied to other dismissals under C.R.C.P. 12(b). *Id.* at 995–96.

¶ 16 Third, Diamonds' argument that *Crow* holds that an award of fees is appropriate any time that a tort action is disposed of under any provision of C.R.C.P. 12 contradicts the plain language of the statute. *See* § 13–17–201 (providing for attorney fees "where any such action is dismissed on motion of the defendant prior to trial under *rule 12(b)* ") (emphasis added). We therefore decline to adopt Diamonds' reading of *Crow*.

¶ 17 Because Diamonds' motion should have been treated as a motion for judgment on the pleadings under C.R.C.P. 12(c), the granting of that motion did not warrant an award of attorney fees and costs. Therefore, we conclude that the trial court did not err in denying Diamonds' request for fees and costs.

## III. Expert Testimony

¶ 18 Diamonds also argues that the trial court erred in denying its motion to dismiss, motion for directed verdict, and motion for judgment notwithstanding the verdict because BSLNI did not present expert testimony "to prove the standards of practice of concrete cutting professionals in the State of Colorado." We disagree.

### A. Background

¶ 19 Diamonds filed three timely motions asserting that BSLNI was required to provide expert testimony on the standard of care for concrete cutters. The trial court denied

the motions, reasoning that the issues in the case did not require specialized knowledge. It considered case law addressing the necessity of proving a standard of care by expert testimony for negligence claims. The trial court explained, however, that "[t]his matter was not tried on a negligence theory, but instead a breach of contract theory," and that under the contract "the relevant standard was that minor, not major, damage to the steel superstructure was acceptable, which the jury obviously found Diamonds breached."

### B. Standard of Review

¶ 20 We review the trial court's denial of Diamonds' motion to dismiss, motion for directed verdict, and motion for judgment notwithstanding the verdict de novo. *Yadon v. Lowry*, 126 P.3d 332, 336 (Colo.App.2005) (motion to dismiss); *Vaccaro v. American Family Ins. Group*, 2012 COA 9, ¶ 40, 275 P.3d 750 (motions for directed verdict and judgment notwithstanding the verdict).

### C. Analysis

■ ¶ 21 Diamonds contends that BSLNI was required to prove that Diamonds "acted unreasonably in performance of its contractual duties and that it failed to perform in a good and workmanlike manner." It contends that doing so required BSLNI to prove the standard of care for concrete cutters by expert testimony because the standard of care involves consideration of industry standards and other considerations that are technical and outside the common knowledge and experience of laypersons.

■ ¶ 22 BSLNI's breach of contract claim, however, did not rely on Diamonds violating an industry or professional standard of care, and BSLNI therefore was not required to prove a standard of care. BSLNI's claim for breach of contract was based on the fact that Diamonds expressly agreed to cause

only "minor" damage to the girders but instead caused major damage in performance of the contract.[1] Under the terms of the contract, Diamonds was not permitted to cause more than minor damage to the girders, regardless of what any industry standards or practices might suggest. Therefore, any industry standards or practices were irrelevant. *See Town of Breckenridge v. Golforce, Inc.*, 851 P.2d 214, 216 (Colo.App. 1992) (expert testimony not required to show applicable professional standard of care where "the contract itself established both the obligations of the parties and the standard of care to be followed by them in carrying out those obligations").

¶ 23 If the parties wanted Diamonds to be held to a specific standard of care, they were free to include such a standard as a term of the contract. *Cf. BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 68, 74 (Colo.2004) (parties expressly contracted that performance must be " 'in accordance with the standards of care, skill and diligence provided by competent professionals who perform work or services of a similar nature' "). Absent an agreement by the parties to abide by an industry standard of care, we will not read such a standard of care into the contract. *See AZCO Construction*, 10 P.3d at 1262 (in contrast to tort law, which imposes duties "by law without regard to any agreement or contract," contract law "is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining"). Therefore, BSLNI was not required to prove an industry standard of care by expert testimony or otherwise.

■ ¶ 24 To the extent that Diamonds argues that expert testimony was required to prove that the damage was more than minor, we reject this argument because (1) BSLNI provided expert testimony that the damage

---

1. In its reply brief, Diamonds asserts, without citation to supporting authority, that "[e]ven if BSLNI is correct that an express promise was made by Diamonds not to cut the girders, there was a conflict of express promises in the contract that made the contract ambiguous, permitting any reasonable performance." Because Diamonds raises this argument for the first time in

its reply brief, we decline to address it. *See, e.g., Jenkins v. Haymore*, 208 P.3d 265, 269 (Colo.App. 2007) (declining to address arguments presented for the first time in a reply brief) (citing *People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo.1990)), *aff'd sub nom. Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238 (Colo.2009).

was not minor; and (2) expert testimony was not necessary. BSLNI presented expert testimony regarding the damage through the structural engineer who developed a repair plan for the bridge. The engineer testified that the damage to the girders compromised the structural integrity of the bridge and that, therefore, in his expert opinion, the damage was not "minor." Diamonds did not object to the engineer's qualification as an expert in engineering or to his expert opinion as to whether the damage was minor.

¶ 25 Nor are we persuaded that expert testimony was required to establish whether the damage was "minor." "Expert testimony is needed only where the issue does not lie within the ambit of common knowledge of ordinary persons." *Park Rise Homeowners Ass'n v. Resource Constr. Co.*, 155 P.3d 427, 430–31 (Colo.App.2006). Here, the evidence presented at trial makes clear that the issue was within the realm of common knowledge.

¶ 26 An employee of BSLNI who observed the concrete cutting and the damage to the girders testified that "all five girder lines had been shredded," and that Diamonds had cut through an entire girder flange and had in some instances cut through the girder cover plates. One of Diamonds' employees who performed the cutting testified that cutting through a flange or a cover plate did not constitute "minor" damage, and that some of the damage was "pretty bad." The trial court found that there "was overwhelming, uncontroverted testimony that the damage was not minor." Under these circumstances, the trial court did not err in determining that BSLNI was not required to provide expert testimony.

### IV. Parties' Requests for Attorney Fees on Appeal

¶ 27 Both parties request attorney fees pursuant to C.A.R. 39.5. We deny both requests.

¶ 28 Diamonds contends that it is entitled to its attorney fees incurred on appeal based on dismissal of BSLNI's tort action under section 13–17–201. However, for the reasons set forth above, Diamonds is not entitled to attorney fees under section 13–17–201.

¶ 29 BSLNI requests fees under C.A.R. 38(d) and section 13–17–102, C.R.S.2012, on the basis that Diamonds' appeal was "frivolous as filed [and] frivolous as argued, and lacks substantial justification." However, Diamonds' appeal was not "so futile, irrational, or unjustified as to warrant an award of fees for a frivolous appeal." *Holt Group, L.L.C. v. Kellum*, 260 P.3d 50, 56 (Colo.App.2010). Therefore, an award of fees on appeal is unwarranted here.

¶ 30 The judgment is affirmed.

Judge LOEB and Judge HAWTHORNE concur.